# IN THE SUPREME COURT OF IOWA

No. 93 / 05-1850

Filed October 5, 2007

**STEPHEN GRAY and SHELLY GRAY, Husband and Wife,**

    Appellants,

vs.

**JAMES R. OSBORN, III,**

    Appellee,

**TAMRA RANDALL,**

    Intervenor-Appellee.

-------------------------------------------------

**TAMRA RANDALL,**

    Appellee,

vs.

**STEPHEN GRAY and SHELLY GRAY,**

    Appellants,

**JOAN K. PECK and MARJORIE A. THIRKETTLE,**

    Intervenors-Appellees.

_____

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Benton County, Kristin L. Hibbs, Judge.


Adjoining land owners seek further review of the decision of the court of appeals rejecting their claim of an express easement. **DECISION OF**

**COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Gregory J. Epping of Terpstra, Epping & Willett, Cedar Rapids, for appellants.

Mark E. Mossman of Mossman & Mossman, L.L.P., Vinton, for appellees Osborn and Randall.

Vernon P. Squires of Bradley & Riley, PC, Cedar Rapids, for intervenors-appellees Peck and Thirkettle.

**APPEL, Justice.**

In this case, we consider whether landowners have an easement across the property of an adjoining landowner or whether they committed trespass when they attempted to exercise rights pursuant to the claimed easement. The district court found that an express easement existed and dismissed claims for trespass and injunctive relief. The court of appeals reversed, and we granted further review. For the reasons expressed below, the decision of the court of appeals is vacated and the decision of the district court is affirmed.

## I. Factual Background and Proceedings.

The facts in this case are generally undisputed. Tamra Randall owned undeveloped property in rural Benton County. In September 1996, Randall recorded the consent and dedication agreement and plat for what is now known as Maple Ridge Estates I. The plat called for the subdivision of the land into five lots. The plaintiffs, Stephen and Shelly Gray, currently own Lot 5.

The plat for Maple Ridge Estates I states that an ingress-egress easement runs across the northern border of Lot 5. The easement is indicated by a dotted line running parallel to the northern border of the property with the phrase "50' ingress egress easement" placed in the middle of the area between the northern border of Lot 5 and the dotted line. The easement abuts a public roadway, 59th Street Trail, on its western end. The eastern end of the easement connects with property that is not described on the plat. In the words familiar to those experienced in real estate transactions, the dominant estate was not specifically identified or described with particularity on the plat.



The consent and dedication agreement, however, did not explicitly refer to an ingress-egress easement across Lot 5. The only restriction concerning building in the subdivision is a setback restriction, requiring all buildings to be at least fifty feet from any public roadway and no closer than twenty feet from any side lot line.

These documents also did not mention the existence of a private gravel road which lay north of the easement and connected 59th Street Trail to lands to the east. At the time of the September 1996 filings, Randall was enmeshed in a dispute with her northern neighbors, Kenneth and Marcia

Rick, regarding the ownership of the gravel road. The Ricks claimed ownership to the northern two-thirds of the gravel road, and litigation commenced regarding the precise boundary between the two properties. Prior to the dispute, Randall had been using the road to access property she owned to the east of Maple Ridge Estates I.

Randall decided that in light of the boundary dispute, she needed to designate a fifty-foot easement, on what was indisputably her property, across the northern boundary of Lot 5. Thus, in the event she was unsuccessful in her litigation with the Ricks, Randall would continue to have secure access to her eastern property through the easement. If unsuccessful, she intended to relocate the road across the fifty-foot easement reserved in the plat for Maple Ridge Estates I.

In January 1998, Randall prevailed in her litigation with the Ricks. As a result of her success, Randall could still access her eastern property by way of the gravel road. She took no action at that time, therefore, to relocate the gravel road onto the easement.

In early 2000, Randall filed a plat for Maple Ridge Estates II. At the time she recorded this plat, she was still the owner of Lot 5 in Maple Ridge Estates I. Maple Ridge Estates II subdivides property located to the east of Maple Ridge Estates I. The plat for Maple Ridge Estates II shows the same fifty-foot, ingress-egress easement along the northern border of Lot 5 of Maple Ridge Estates I. The Maple Ridge Estates II plat does not alter the location, dimension, or purpose of the easement.

As with the Maple Ridge Estates I plat, Randall also filed covenants related to Maple Ridge Estates II. The restrictive covenants convey a fifty-foot easement to the owners of Lots 3 and 4 "over and upon the road shown on the plat for Maple Ridge Estates II . . . ."

After these documents related to Maple Ridge Estates I and Maple Ridge Estates II were recorded, a series of land transactions occurred. Ultimately, Stephen and Shelly Gray, the plaintiffs in this case, became owners of Lot 5 in Maple Ridge Estates I. The Grays' deed specifically noted that their purchase was subject to all covenants, restrictions, and easements of record. In adjoining Maple Ridge Estates II, Joan K. Peck and Marjorie A. Thirkettle became owners of Lot 3 and James R. Osborn III became owner of Lot 4.

Prior to the purchase of their interest in Maple Ridge Estates I, Lot 5, the Grays obtained an abstract of title and a title opinion. The Grays were further provided with a copy of the plat for Maple Ridge Estates I by their realtor. The Grays saw the wording related to the easement on the plat, but professed to have difficulty reading it because of the copy's poor, fuzzy quality. The Grays claim to have been told by someone that the easement was for utility purposes only.

After purchasing the property, the Grays decided to construct a fence for their horses. Worried about possible restrictions, Stephen Gray questioned Randall as to the fence's proper location. At trial, Randall testified that she told Gray not to construct any type of permanent fence within the fifty-foot easement. Gray disputed this testimony, claiming that there was no mention of the easement. In any event, the Grays' fence essentially follows the southern line of the fifty-foot easement.

After Osborn constructed his home on Maple Ridge Estates II, Lot 4, Peck and Thirkettle became concerned about the proximity of their home on Lot 3, to the driveway used by Osborn to reach his residence. Osborn, Peck, and Thirkettle were utilizing the gravel road, which lay north of the easement, to access their property. The end of the road, however, veered

south and crossed onto the Peck/Thirkettle lot in order to connect to Osborn's lot. After considerable discussion, Osborn agreed to change his manner of access by constructing a driveway "spur" on the Grays' land, which he believed was subject to the ingress-egress easement.

No one contacted the Grays before construction began on Osborn's new access. From here, the dispute escalated. The Grays built a temporary and later a permanent fence blocking access to the new driveway. Osborn reacted by destroying the fence with a skid loader.

Shortly after the destruction of the Grays' fence, they filed an action in district court for temporary and permanent injunction, claiming trespass and seeking damages for the destruction of the fence, cleanup costs, and the cost to rebuild the fence. Osborn filed a counterclaim for declaratory relief, seeking a judicial declaration of the existence and validity of a fifty-foot, ingress-egress easement over Lot 5. Peck and Thirkettle intervened, claiming an interest in the easement as adjoining landowners. Randall also intervened as a portion of the claimed easement lays on her property directly north of the Grays.

In June 2004, the district court denied the application for a temporary injunction, but ordered Osborn not to expand the spur and ordered that no one exercise additional use of the easement. At trial, the Grays claimed Osborn violated the order by using the easement as a parking lot during his Halloween party and sought monetary damages for this violation. Osborn, in turn, alleged that the Grays constructed a shed on the easement in violation of the court's order.

The matter came to trial on May 9, 2005. On October 10, 2005, the district court found in favor of Osborn and the other parties aligned with him. According to the district court, the recorded documents demonstrated

the existence of an express fifty-foot easement over the northern boundary of the Grays' lot. The district court further found that the easement was for the benefit of Lots 3 and 4 owned by Peck, Thirkettle, and Osborn in Maple Ridge Estates II. The Grays filed a timely notice of appeal.

We transferred the case to the court of appeals. The court of appeals found that the two filed plats were insufficient to create an easement because they were made at different times and because the language of the second plat cannot be used to create an easement over the Grays' land. The court of appeals reversed the district court order and remanded the case for consideration of the Grays' claims for trespass and injunctive relief. We granted further review.

## II. Standard of Review.

The parties do not agree on the appropriate standard of review. The Grays contend our review is de novo as the determination of easement rights is equitable. Osborn and aligned parties assert our review is for errors of law. We agree. The original action was filed by the Grays as a "petition at law," while Osborn counterclaimed for declaratory judgment. Whether a declaratory judgment action is considered legal or equitable in nature is "determined by the pleadings, the relief sought and the nature of each case." *Bjork v. Dairyland Ins.*, 174 N.W.2d 379, 382 (Iowa 1970). Further, the parties made evidentiary objections during trial, some of which were sustained, which suggests a trial at law. Because we generally hear a case in the same manner in which it was tried to the district court, our review is for errors of law. *Johnson v. Kaster*, 637 N.W.2d 174, 177 (Iowa 2001). "The trial court's findings carry the force of a special verdict and are binding on us if supported by substantial evidence. If the findings are ambiguous they will be construed to uphold, not defeat, the judgment." *Id.*

**III. Discussion.**

In their review, the court of appeals addressed the issue of whether two successive plats could be read together to create an express easement. Whether two successively filed documents may be read together to create an easement appears to be a matter of first impression. We believe, however, that there is an antecedent legal question that is wholly dispositive. For the reasons discussed below, we hold that the plat for Maple Ridge Estates I alone creates an express easement across the Grays' property in favor of Osborn and the aligned parties.

An easement is a restriction on another person's property rights. *Indep. Sch. Dist. of Ionia v. De Wilde*, 243 Iowa 685, 692, 53 N.W.2d 256, 261 (1952). Express grant or reservation is one of the ways an easement may be created. *Nichols v. City of Evansdale*, 687 N.W.2d 562, 568 (Iowa 2004). Because an easement is an interest in real property, any express easement falls within the statute of frauds and must be in writing. *See* Iowa Code § 622.32 (2007).

An easement created via a plat map is valid under Iowa law. *Maddox v. Katzman*, 332 N.W.2d 347, 351 (Iowa Ct. App. 1982). Today, no magic words or terms of art are necessary to create an easement. In determining the existence of an easement, the intention of the parties is of paramount importance. Restatement (Third) of Property: Intent to Create a Servitude § 2.2 cmt. *d* (2000).

The recorded plat for Maple Ridge Estates I clearly denotes an intention to create an easement along the northern border of Lot 5. Not only is the easement's location and dimension specifically delineated, the precise term "EASEMENT" is used. Moreover, the easement's purpose—ingress and egress—is explicitly noted. *See* Iowa Code § 354.6(2)

("Easements necessary for the orderly development of the land within the plat shall be shown and the purpose of the easement shall be clearly stated."). The Grays' reliance on *Maddox*'s requirement of a detailed description of the easement's purpose, therefore, is without merit as ingress egress is sufficiently comprehensive.

Nevertheless, plaintiffs argue that the easement must fail because the plat does not specifically state which property is to be the easement's dominant estate. Where there is a technical deficiency in a land transaction, however, we have held the ambiguity may be resolved by resorting to the intention of the parties as gleaned from the instrument itself and the surrounding circumstances, including subsequent conduct by the parties. *Goss v. Johnson*, 243 N.W.2d 590, 595 (Iowa 1976) (citing *Flynn v. Michigan-Wisconsin Pipeline Co.*, 161 N.W.2d 56, 64–65 (Iowa 1968)).

The instrument and the surrounding circumstances clearly show that the property abutting the east end of the easement is the dominant estate. First, the plat states that the easement's purpose is for ingress and egress and the easement itself connects the eastern property to a public roadway— 59th Street Trail. Thus, on its face, the easement explicitly is designed to provide access to the public highway. This articulated purpose is irreconcilable with the Grays' claim that Lot 5 serves as *both* the servient and dominant estate. Lot 5 already has direct access to 59th Street Trail, so it would glean no benefit from the easement. Moreover, as easements are extinguished when the dominant and servient estates merge, it would be both illogical and impossible to create an easement for the benefit of the same land which the easement burdens. The plat's obvious import, therefore, is that the property to the east of Lot 5, unconnected to the roadway, is the dominant estate.

Second, Randall testified at trial that her purpose in creating an easement on Maple Ridge Estate I plat was to benefit the eastern half of her property. This testimony is consistent with her contemporaneous boundary dispute with the Ricks. Had Randall not prevailed, she would not have had access to her property east of Lot 5.

Third, the plat for Maple Ridge Estates II explicitly points to Lots 3 and 4 as the dominant estates. It may be true, as the Grays claim, that "construing together deeds and mortgages made at different times, by different parties, with different objects, having nothing in common except that they refer to some one or more of adjoining lots with which they are concerned" is ordinarily not sufficient to create an easement. 28A C.J.S. *Easements* § 57 at 235–38 (2007). In this case, however, both plats were filed by a common owner, Randall, prior to her sale of Lot 5, only a few years apart, and for arguably the same purpose. If nothing else, the second plat evidences Randall's intent, as subsequent conduct by the parties, to create an easement over Lot 5 for the benefit of her eastern property.

Finally, it is clear that the Grays are chargeable with actual notice of the easement. Stephen Gray testified that at the time of his purchase of Lot 5 he was provided a copy of the plat for Maple Ridge Estates I. He stated that although an easement was clearly visible on the plat, he could not read the words "ingress" and "egress" because their copy was difficult to read. The Grays mistakenly believed that the easement was for utility purposes only. This court held long ago, however, that

> [o]ne who purchases land with knowledge of facts as would put a prudent person upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely by another, is chargeable with the actual notice he would have received.

*Johnson v. Chicago B. & Q. R.R.*, 202 Iowa 1282, 1288–89, 211 N.W. 842, 846 (1927). At the very least, the plat for Maple Ridge Estates I clearly put the Grays on inquiry notice. Additionally, although Stephen Gray denied Randall's testimony that she specifically informed him of the easement during their telephone conversation, the fact that the Grays ultimately placed their fence on the southern border of the easement is strongly suggestive of actual knowledge.

Because we hold that the Maple Ridge Estates I plat established an express easement, we need not address the question of whether an express easement is created by two separate documents under the facts and circumstances presented in this case.

## IV. Conclusion.

By specifically providing the location, dimension, and purpose of the easement, the plat for Maple Ridge Estates I created an express easement over the plaintiffs' lot. Any ambiguity, moreover, as to the easement's dominant estate is resolved by resort to the intention of the parties. Both the instrument itself and the surrounding circumstances support a finding of a valid easement.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**