# IN THE COURT OF APPEALS OF IOWA

No. 3-784 / 13-0355
Filed February 5, 2014

**NEIL A. LEMASTER and STEPHANIE KEMPKER,**
        Plaintiffs-Appellees/Cross-Appellants,

**vs.**

**JOSEPH FRANKLIN POWERS and MERRY LYNN
POWERS, husband and wife,**
        Defendants-Appellants,

**JOSHUA BURCH and CHRISTY BURCH, husband
and wife,**
        Respondents-Appellants/Cross-Appellees.

_____

**LARRY SUNDEN and LINDA SUNDEN, husband
and wife,**
        Plaintiffs-Appellants,

**vs.**

**NEIL A. LEMASTER and STEPHANIE KEMPER,**
        Defendants-Appellees/Cross-Appellants.
_____

        Appeal from the Iowa District Court for Lee (North) County, John M.

Wright, Judge.

        Neighboring landowners appeal a district court order giving Neil LeMaster

and Stephanie Kempker exclusive rights to use a roadway that travels across

separate easements.  LeMaster and Kempker cross-appeal, asserting the court

erred in entering a monetary judgment against them.  **AFFIRMED IN PART AND**

**REVERSED IN PART.**

        Elaine F. Gray of Fehseke & Gray Law Offices, Fort Madison, for

appellants.

        Gregory A. Johnson of Johnson & Skewes, Fort Madison, for appellees.

        Considered by Danilson, P.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, J.**

This appeal arises from a dispute between neighboring landowners in a residential development in North Lee County. The dispute concerns the scope of certain express easements.

## I. *Background Facts and Proceedings*

It is often stated that a picture is worth a thousand words. That is the case here.

We begin with a 1977 plat map of the residential development.



This map reveals seven lots and a large area north of the lots designated "Outlot 1." Our focus is on Lots 4 and 5, which are bisected by a "roadway easement," and "Outlot 1," which is divided into "Tract I," "Tract II," and "Tract III."

The second picture, also a plat map, hones in on the roadway easement, which runs north into Outlot 1.



The map reveals that petitioners LeMaster and Kempker own the part of Outlot 1 situated east of the roadway easement (Tracts II and III); respondents Joseph Franklin and Merry Lynn Powers own the part of Outlot 1 situated west of the roadway easement (Tract I); respondents Joshua S. and Christy A. Burch own Lot 4, situated south of the LeMaster/Kempker property; and respondents Larry E. and Linda K. Sunden own Lot 5, situated south of the Powers property. The second picture also reveals the boundaries of the roadway easement. The boundaries are situated on Lots 4 and 5 and Tracts I, II, and III of Outlot 1.

The third picture, drawn by defense counsel while cross-examining LeMaster, is a close-up of the disputed area.



In pertinent part, it shows that the roadway easement provides access to a county road known as Pin Oak Drive.

LeMaster and Kempker (the owners of Tracts II and III of Outlot 1), sued the Burches (the owners of Lot 4) and the Powerses (the owners of Tract I of Outlot 1). They sought a declaratory judgment that the Burches and the Powerses had no "rights, title or interest in or to that portion of the subject roadway located on Tracts II or III." They also sought a declaration that they had "an exclusive easement to use that portion of the subject roadway located on Tract I" and "that portion of the roadway located on Burch's land" to the south. LeMaster and Kempker also sought to enjoin the Powerses and Burches "from entering upon any portion of the existing roadway, including that portion located on Tract 1 (Powerses' Land)." The Powerses, the Burches, and the Sundens (owners of Lot 5) filed counterclaims and cross-petitions, asserting certain rights over the easement area.

Following trial, the district court declared LeMaster and Kempker (1) are "the only part[ies] to have any right, title, or interest to the roadway located on Tracts 2 or 3"; (2) "have an exclusive easement to use the roadway located on Tract 1"; (3) "have an exclusive easement to use the roadway located on Lot 5," but only for motor vehicles; and (4) "have an exclusive easement to use the roadway located on Lot 4."[1] The court enjoined the Powerses and Burches from "entering the roadway extending from Pin Oak Drive to the [LeMaster/Kempker] property, with the exception of non-motorized vehicle traffic on the roadway over the easement located on Lot 5." The court also awarded damages to the

---

[1] The district court separately declared LeMaster and Kempker and the Powerses had "the right to access the dam overflow pipe extending through the easement on the dam area for purposes of maintaining and repairing the dam." This portion of the court's ruling is not in dispute.

Sundens and Burches and granted other relief not relevant here. The Powerses, Burches, and Sundens, who we will refer to as the adjoining landowners, filed a notice of appeal. LeMaster and Kempker cross-appealed.

## II. Scope of Review

The court tried equitable claims for injunctive relief, legal claims for money damages, and a claim for declaratory relief, which could be at law or in equity. *See SDG Macerich Props., L.P. v. Stanek Inc.,* 648 N.W.2d 581, 584 (Iowa 2002); *Fettkether v. City of Readlyn*, 595 N.W.2d 807, 811 (Iowa Ct. App. 1999); *see also* Iowa R. App. P. 6.907. "If . . . both legal and equitable relief are demanded, the action is ordinarily classified according to what appears to be its primary purpose or its controlling issue." *Mosebach v. Blythe*, 282 N.W.2d 755, 758 (Iowa Ct. App. 1979).

The adjoining landowners assert that "none of [the legal] claims are on appeal" and our review is de novo.[2] Based on this concession, LeMaster and Kempker agree our review is de novo. In light of the parties' agreement, that is the standard we will use.[3]

## III. Analysis

### A. Exclusivity of Use

---

[2] They appear to characterize the action for declaratory judgment as equitable in nature. *See Ernst v. Johnson Cnty.*, 522 N.W.2d 599, 602 (Iowa 1994).

[3] The record raises some question about our scope of review because, although the case was filed in equity, the district court ruled on objections, which is the hallmark of a law action. *See Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 179 (Iowa 2010).

"An easement is a restriction on another person's property rights." *Gray v. Osborn*, 739 N.W.2d 855, 861 (Iowa 2007). An easement may be created by "[e]xpress grant or reservation." *Id.* An express grant may come in the form of a plat map. *Id.* It also may come in the form of "a writing manifesting a clear intent to create an interest in the land." 25 Am Jur. 2d *Easements and Licenses* § 15 (2004).

The adjoining landowners contend LeMaster and Kempker should not have been granted exclusive use of the roadway easement. They assert, and LeMaster and Kemkper do not dispute, that resolution of the issue is governed by "one plat of survey and three express written contracts/grants of easement."

As noted, the 1977 plat map shows the roadway easement running through Lots 4 and 5. A 1979 document created by the individuals who subdivided the lot extended the roadway easement to a corner of Lot 5 "for the benefit of all other lots in said Pin Oak Acres." A 1981 document created "an easement for ingress and egress and utilities" to benefit Tracts I, II, and III in Outlot 1. A 2008 document executed by the Burches' predecessors on Lot 4 conveyed to LeMaster/Kempker "a fifteen(15)-foot wide private access roadway easement for ingress/egress to and from" the LeMaster/Kempker property. The adjoining landowners contend "[n]othing in any of the four documents grants to any party the exclusive right to use the property at issue." We will address their arguments in the same order as the district court did.

The adjoining landowners do not contest the court's first ruling that LeMaster and Kempker "are the only party to have any right, title or interest to

the roadway located on Tracts 2 or 3." They specifically assert that "neither the Powers nor any guest claiming rights derivative from the Powers need rights of ingress or egress over Tracts II or III to reach the Powers' property."

We turn to the court's second declaratory ruling that LeMaster and Kempker "have an exclusive easement to use the roadway located on Tract I." As noted, the tract is owned by the Powerses. As owners, they have "all the rights and benefits of ownership consistent with the easement." 25 Am Jur. 2d *Easements and Licenses* § 86. That includes the right to use the land as long as the use does not interfere with the purpose and character of the easement. *Id.* ("Unless the grant conveying an easement specifically characterizes the easement as exclusive, the grantor of the easement retains the right to use the property in common with the grantee, but such use must be consistent with the rights of the easement holder.") A*ccord Skow v. Goforth*, 618 N.W.2d 275, 278 (Iowa 2000) ("'[T]he fee owner retains whatever uses do not interfere with the rights of [the easement holder.]'" (quoting 7 *Thompson on Real Property* § 60.04(b)(1), at 458 (David Thomas ed., 1994))).

Nothing in the 1981 document creating the roadway easement over Tract I grants the owners of Tracts II and III exclusive rights to its use. The opposite is true. The document evinces an intent to afford access to the road by the owners of all three tracts. The remaining documents do not reflect a contrary intent. Accordingly, we conclude LeMaster and Kempker do not "have an exclusive easement to use the roadway located on Tract I." *See Schwenker v. Sagers*, 230 N.W.2d 525, 527 (Iowa 1975) ("(The easement holder's) rights are not exclusive, and (servient owners) may use the easement strip for any purpose not

inconsistent with (the) easement." (quotation marks and citation omitted)). We reverse that portion of the court's decree.

This brings us to the district court's third declaratory ruling: LeMaster and Kempker have "an exclusive easement to use the roadway located on Lot 5" but only for motor vehicles. The 1979 document creates "a perpetual easement for road purposes on, over, and across" a small portion of Lot 5. The document goes on to state that the "grant of easement shall be binding upon the heirs, executors, administrators, successors and assigns of the parties and shall be a perpetual restriction upon said Lot 5 and a perpetual covenant for the benefit of all other lots in said Pin Oak Acres." By its terms, the easement is not exclusive to LeMaster and Kempker. Accordingly, we reverse this portion of the district court's decree. In light of the reversal, we find it unnecessary to address the court's statement that "[t]his easement shall only apply to motor vehicles."

The court finally declared that LeMaster and Kempker "have an exclusive easement to use the roadway located on Lot 4." As noted, this easement was established in 1977 by way of a plat map, and no accompanying document defined the scope of the easement. Nonetheless, there can be no doubt from the map itself that the easement was intended to benefit the owners of the tracts in Outlot 1, who would otherwise have had no access to what is labeled the "County Road" (Pin Oak Road). If this were the only pertinent document, resolution of the issue would be easy.

The 2008 agreement between LeMaster and Kempker and the prior owners of Lot 4 complicates the issue. As noted, those owners conveyed to LeMaster and Kempker "a fifteen (15)-foot wide private access roadway

easement for ingress/egress to and from" their property. On the question of who would benefit from the easement, the agreement provides:

> Because the [LeMaster/Kempker] property is the only real estate immediately adjacent to the Northeasterly side of the Grantors' real estate, [LeMaster and Kempker] agree that they will not consent to any other use of the other 15 feet of the originally platted roadway easement, to cross their real estate, to reach or accommodate any other resident or owner of real estate in the subdivision (including outlots) without prior written consent of the [owners of Lot 4] herein or their successors in interest.

This provision purports to grant LeMaster and Kempker exclusive access to a portion of the roadway easement and purports to grant the Lot 4 owners the right to deny others access to that portion. The agreement is inconsistent with the 1977 plat map, the 1979 document extending the easement through a portion of Lot 5 and stating the easement is for the benefit of all the residential landowners, and the 1981 agreement creating perpetual easements to benefit the owners of all the tracts in Outlot 1. The two sets of landowners had no authority to arbitrarily reconfigure an existing easement running in favor of multiple landowners and to simultaneously limit its use. *See* 28A C.J.S. *Easements* § 67 (2008) ("A landowner who has granted an easement in land may grant subsequent easements in the same land, so long as the subsequent easements are neither inconsistent with, or a burden upon, the prior easement."). We reverse this portion of the ruling.

Our reversal of the district court's declaratory ruling requires us to address the adjoining neighbors' request for the removal of a gate and gate extension that

LeMaster and Kempker erected to limit access to the roadway easement. That request is granted.[4]

We are left with the district court's injunction preventing the adjoining landowners from using most of the roadway easement. In light of our conclusion that LeMaster and Kempker do not have an exclusive right to use the roadway easement and in the absence of evidence the adjoining landowners interfere with LeMaster and Kempker's use of the roadway easement, we conclude the adjoining landowners cannot be enjoined from using the roadway easement. Accordingly, we reverse the order for injunctive relief.

### B. Adjoining Neighbors' Request for Injunctive Relief Prohibiting LeMaster and Kempker's Use of Non-Street Legal Vehicles

At trial, Mr. Burch, owner of Lot 4, testified that the children of LeMaster and Kempker rode motorcycles up and down the roadway easement while he was trying to sleep. He sought an injunction to preclude the use of these vehicles. The district court declined this request as well as a request to prohibit all-terrain vehicles (ATVs) from using the part of the easement running through Lot 4. The court acknowledged that noise from these vehicles "could rise to the level of a nuisance," but noted "[n]o evidence was presented regarding a Lee County noise ordinance."

On appeal, the adjoining landowners take issue with this ruling on several grounds tied to the language of the easements. We need not address these grounds, because Mr. Burch conceded the motorcycle noise stopped in 2011

---

[4] The adjoining neighbors also made a request for damages for loss of use of the roadway but, in their reply brief, they "make no request for the entry of an order for damages against LeMaster and Kempker based on their exclusion of the Powers from their property."

after he complained to authorities, and he did not complain about the noise generated by the ATV. In any event, LeMaster and Kempker testified they primarily used the ATV to deposit and retrieve trash and mail and not for recreational purposes, as the adjoining landowners asserted. Their use as testified would qualify as "ingress and egress" within the meaning of the express easements. For these reasons, we affirm the district court's denial of injunctive relief.

### C. Damages

Following the 2008 agreement with the prior owners of Lot 4, LeMaster and Kempker constructed a gravel roadway. The Burches and Sundens sought damages based on what they claimed was the negligent construction of the road, which resulted in the development of "berms," or low-lying areas, along the roadway. The district court awarded the Burches $497.91 in damages and the Sundens $55.31.

On cross-appeal, LeMaster and Kempker argue the award in favor of the Burches is unreasonable. The Burches make no responsive argument and, as noted, assert that they did not appeal any of the law claims. Accordingly, LeMaster and Kempker are entitled to summary reversal on this issue. See Iowa R. App. P. 6.903(2)(g)(3).

Even assuming without deciding that summary reversal is inappropriate, we find no legal basis for the damage award. Mr. Burch testified the berms made it difficult for Ms. Burch to mow the grassy area next to the gravel road. He opined that LeMaster could fix the problem by tilling down the berms every six years and by adding gravel to the road. At the same time, he acknowledged

LeMaster did till down the berm in 2010, LeMaster was entirely responsible for repairing the road at his own cost, and his request for damages was premised on what might happen "in the future whenever something blows up." In substance, he conceded he had no immediate damages. Accordingly, we reverse the money judgment in the Burches' favor.

### IV. Disposition

We reverse the ruling to the extent it grants LeMaster and Kempker exclusive use of the roadway easement and enjoins the neighboring landowners from using the roadway easement. We also reverse the damage award in favor of the Burches. We grant the adjoining landowners request for affirmative relief in the form of removal of the gate and gate extension. We affirm the balance of the opinion.

Seventy-five percent of the costs of this appeal are allocated to LeMaster and Kempker. Twenty-five percent of the costs are allocated to the adjoining landowners.

**AFFIRMED IN PART AND REVERSED IN PART.**