# IN THE COURT OF APPEALS OF IOWA

No. 20-0955
Filed June 16, 2021

**RUTH E. RARICK TRUST,**
    Plaintiff-Appellant,

**vs.**

**CITY OF TIFFIN, IOWA,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Kevin McKeever, Judge.

The Ruth E. Rarick Trust appeals the denial of its petition for writ of certiorari. **REVERSED AND REMANDED.**

Charles A. Meardon, Robert N. Downer, and Peter J. Gardner of Meardon, Sueppel & Downer P.L.C., Iowa City, for appellant.

Robert W. Goodwin of Goodwin Law Office, P.C., Ames, and Crystal K. Raiber and Robert S. Michael of Holland, Michael, Raiber & Sittig PLC, Iowa City, for appellee.

Heard by Doyle, P.J., and Mullins and May, JJ.

**MAY, Judge.**

The Ruth E. Rarick Trust (Trust) appeals the denial of its petition for writ of certiorari. We reverse and remand.

**I. Factual Summary and Prior Proceedings**

The Trust owns approximately eighty acres of land north of the City of Tiffin (Tiffin). In August 2019, the Trust executed a quit claim deed to the City of Coralville (Coralville) for a 7.63 acre portion of land. The deed states the land is:

> [S]ubject to the possibility of reverter unless the Grantee completes the following items:
> a. The extension of Forevergreen Road located to the west of Jasper Avenue right-of-way is constructed by the City of Coralville at a location agreeable between Grantor and Grantee within five (5) years of the date of this deed . . . .

Tiffin sought to condemn a portion of the 7.63 acres for its own road project. In Iowa, the procedure for condemnation is set by Iowa Code chapter 6B (2019). *See* Iowa Code § 6B.1A. It requires an "acquiring agency"—like Tiffin—to take several steps before filing an application to condemn with the district court. *See generally id.* § 6B.3 (describing application process, including contents of application). We describe some of those steps here.

First, section 6B.45 requires the acquiring agency to have an appraisal prepared. The appraisal "shall include, at a minimum, an itemization of the appraised value of the real property or interest in the property, any buildings on the property, all other improvements including fences, severance damages, and loss of access." *Id.* § 6B.45. Section 6B.45 also requires the acquiring agency to submit "a copy of the appraisal" to "the person, corporation, or entity whose property or interest in the property is to be taken."

Next, section 6B.54(3) requires the agency to "establish an amount which it believes to be just compensation for the real property" and then "make a prompt offer to acquire the property for the full amount established by the agency." The offer may not "be less than the fair market value the acquiring agency has established for the property or property interest pursuant to the appraisal required in section 6B.45." *Id.* § 6B.54(3).

Then, "before filing an application for condemnation or otherwise proceeding with the condemnation process," section 6B.2B requires the acquiring agency to "make a good faith effort to negotiate with the owner to purchase the private property or property interest." Again, the "acquiring agency shall not make an offer to purchase the property or property interest that is less than the fair market value the acquiring agency has established for the property or property interest pursuant to the appraisal required in section 6B.45." *Id.* § 6B.2B.

In light of these statutory requirements, Tiffin obtained an appraisal for the land it wanted to condemn. The appraisal acknowledged that Coralville and the Trust had separate property interests in the land. But the appraisal did not separately value those interests. Instead, the appraisal simply listed the "estimated just compensation" for the land at $41,300. It did not apportion or allocate the $41,300 between Coralville and the Trust.

In October, Tiffin passed a resolution. It established $41,300 as Tiffin's determination of "just compensation for acquisition of" the land it sought to use "for the Forevergreen Construction Road Project." Tiffin then sent a joint offer to Coralville and the Trust. The offer stated a purchase price of $41,300. It made no division between Coralville's interest and the Trust's interest. Presumably, Tiffin

anticipated Coralville and the Trust would divide the amount between themselves. Coralville and the Trust rejected Tiffin's offer.

In December, Tiffin passed a second resolution. It authorized Tiffin to initiate condemnation proceedings to acquire property rights for the land from Coralville and the Trust. It also proclaimed that Tiffin "has made a good-faith effort to negotiate with the owners to purchase" the relevant property "before proceeding with condemnation, but has been unable to acquire said portion and/or interest in the property."

In January 2020, Tiffin submitted an application for condemnation to the chief judge as required by section 6B.3. In response, the Trust petitioned for writ of certiorari.[1] It claimed Tiffin could not initiate condemnation proceedings before it (1) appraised the Trust's interest *separately* from Coralville's and (2) made *separate* offers to Coralville and the Trust.[2]

---

[1] The Trust's petition for writ of certiorari is one of six cases that involve Tiffin's plans to extend Forevergreen Road. The district court in case number CVCV080519 summarized the cases as such:

> There are now six cases that have been filed that are related to this case, none of which are individually assigned to any judge of the Sixth Judicial District: CVCV081144 (a certiorari action brought by the Trust, which was dismissed by agreement of the parties on January 6, 2020); CVCV081458 (a certiorari action brought by the Trust); CVCV081474 (a certiorari action brought by the City of Coralville, Iowa); CVCV081479 (a declaratory judgment action brought by Tiffin); EQCV081622 (an Iowa Code chapter 6B claim brought by the City of Coralville, Iowa); and EQCV081617 (an Iowa Code chapter 6A and 6B claim brought by the Trust and Clint Rarick).

[2] The Trust also claimed Tiffin did not have legal authority to proceed with the condemnation proceeding since there was no judicial determination prior to Tiffin passing the second resolution. This issue was resolved in Tiffin's favor in case number CVCV080519. The Trust agrees this issue is now moot. So we see no reason to mention it further.

The district court denied the Trust's petition for writ of certiorari. The Trust filed a motion to alter, amend, or enlarge pursuant to Iowa Rule of Civil Procedure 1.904(2). The court denied the Trust's motion. The Trust now appeals.

## II. Standard of Review

"A writ of certiorari is limited to triggering review of the acts of an inferior tribunal on the basis the inferior tribunal exceeded its jurisdiction or otherwise acted illegally." *Crowell v. State Pub. Def.*, 845 N.W.2d 676, 682 (Iowa 2014). "Illegality exists when the [tribunal]'s findings lack substantial evidentiary support, or when the [tribunal] has not properly applied the law." *Dir. of Iowa Dep't of Hum. Servs. v. Iowa Dist. Ct.*, 621 N.W.2d 189, 191 (Iowa 2001) (citation omitted).

On appeal, our review of the certiorari action before the district court is for correction of errors at law. *Burroughs v. City of Davenport Zoning Bd. of Adjustment*, 912 N.W.2d 473, 478 (Iowa 2018). "We are bound by the district court's findings if supported by substantial evidence." *TSB Holdings, L.L.C. v. Bd. of Adjustment for City of Iowa City*, 913 N.W.2d 1, 10 (Iowa 2018) (citation omitted). "However, we are not bound by erroneous legal rulings that materially affect the court's decision." *Id.* (citation omitted).

## III. Analysis

We first address Tiffin's argument that this appeal is moot. Because we conclude this appeal is not moot, we also address the Trust's argument on the merits.

## A. Mootness

"One familiar principle of judicial restraint is that courts do not decide cases when the underlying controversy is moot." *Rhiner v. State*, 703 N.W.2d 174, 176

(Iowa 2005). "If an appeal no longer presents a justiciable controversy because the disputed issue has become academic or nonexistent, the appeal is ordinarily deemed moot." *Crowell*, 845 N.W.2d at 681. "The key in assessing whether an appeal is moot is determining whether the opinion would be of force or effect in the underlying controversy." *State v. Avalos Valdez*, 934 N.W.2d 585, 589 (Iowa 2019) (citation omitted).

Tiffin argues this case is moot because, in a separate case (CVCV080519), the district court ruled the quit claim deed from the Trust to Coralville was invalid.[3] As a result, the Trust no longer has a possibility of reverter[4] but, instead, is the sole

---

[3] That court held:

> [The Tiffin City Administrator]'s affidavit, which is not refuted by any affidavit testimony offered by the Trust, establishes that Forevergreen Road is an existing city street in Tiffin, and pursuant to the above-cited provisions of Iowa Code chapter 306, Tiffin has the authority to control, extend, and construct a new portion of Forevergreen Road in Tiffin. Further, the [c]ourt concludes the undisputed facts, as established by the affidavit of [the administrator], *show the Quit Claim Deed from the Trust to Coralville is invalid* because the south 250 feet of the Trust's property referred to in the Quit Claim Deed does not adjoin Coralville. It also is undisputed that the IDOT originally intended to construct Forevergreen Road through North Liberty to Jasper Avenue in Tiffin, which then was a gravel two-lane road. Changes to the IDOT's construction plans necessitated that the Tiffin portion of Forevergreen Road have to cross a small portion of the Trust's/Coralville's property. Coralville has no jurisdiction and control over this area pursuant to Iowa Code chapter 306.
>     . . . Despite the fact that the Trust deeded the property to Coralville, Tiffin retains the authority and jurisdiction to condemn this portion of the Trust's property because the land is not currently devoted to a public use through action to be taken by Coralville, and Tiffin's construction of Forevergreen Road in Tiffin is a public purpose that supports exercise of eminent domain over the Trust.

(Emphasis added.)

[4] In its reply brief, the Trust claims that Tiffin failed to preserve error on the issue of mootness. The district court in this case noted that Tiffin "supplemented its arguments to assert that . . . [the Trust]'s arguments in this action are moot based

owner of the land Tiffin seeks to condemn. This means Coralville no longer has any interest in the land. This also means the sole question in this appeal—whether Tiffin was obligated to provide separate appraisals and offers to Coralville and the Trust—is now moot.

We disagree. The separate case mentioned by Tiffin (CVCV080519) is also currently before this court. Our opinion in that case is also being issued today. *See City of Tiffin v. TAT, LLC*, No. 20-0912, _____ WL _____ (Iowa Ct. App. June 16, 2021). There, we hold the validity of the quit claim deed was not properly before the district court. *See id.* As a result, the court's ruling does not impact the deed's validity. *See, e.g.*, *Eller v. Newell*, 141 N.W. 52, 55 (Iowa 1913) (noting relief allowed "must affect or be affected by the subject-matter of the action" and not "new matter[s] not essential to the determination of that put in litigation by the petition"). So we conclude the mootness doctrine does not apply here.

**B. Writ of Certiorari**

We turn next to the central issue in this appeal: Assuming the Trust holds the property interest known as a possibility of reverter (also referred to just as "reverter") in the land sought by Tiffin, does the Iowa Code require Tiffin to provide the Trust with a separate appraisal and offer for *its* property interest? The Trust believes it does. And so, the Trust argues, Tiffin violated chapter 6B by failing to provide a separate appraisal and offer before initiating condemnation proceedings.

---

on [the ruling in CVCV080519]." Ultimately, the court found it appropriate to address the Trust's underlying claims "for the purpose of establishing a complete record in this action." We assume this is enough to preserve error. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (holding issues both raised and decided by the district court are preserved for appellate review); *see also DeVoss v. State*, 648 N.W.2d 56, 61–62 (Iowa 2002) (discussing error preservation).

Tiffin disagrees. Tiffin believes nothing in chapter 6B requires it "to appraise the value of [the Trust's] possibility of reverter" or make a separate offer.

To decide which view of chapter 6B is correct, we look to "the text of the statute, the words chosen by the legislature." *Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019) (quotation marks omitted) (quoting *State v. Childs*, 898 N.W.2d 177, 184 (Iowa 2017)); *accord Amana Soc'y v. Colony Inn, Inc.*, 315 N.W.2d 101, 118 (Iowa 1982) (noting "[w]e take the statute as we find it" and observing that any "argument that the statute is inappropriate . . . should have been addressed to the legislature, not to this court"); *Chi. & Nw. Ry. Co. v. City of Osage*, 176 N.W.2d 788, 793 (Iowa 1970) (noting "we cannot by judicial interpretation nullify the definite pronouncements of the legislature"). "We should give the language of the statute its fair meaning, but should not extend its reach beyond its express terms." *In re Marshall*, 805 N.W.2d 145, 158 (Iowa 2011).

We generally give words "their common, ordinary meaning in the context within which they are used." *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 168 (Iowa 2016) (citation omitted); *cf. Nix v. Hedden*, 149 U.S. 304, 307 (1893) (noting that, although "[b]otanically speaking, tomatoes are the fruit of a vine," they are "vegetables" in "the common language of the people"). "[B]ut technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning." Iowa Code § 4.1(38). Also, it is "a well-settled principle of statutory interpretation that '[w]hen the legislature has defined words in a statute—that is, when the legislature has opted to "act as its own lexicographer"—those definitions bind us.'" *State v. Iowa Dist. Ct. for Scott Cnty.*, 889 N.W.2d 467, 471 (Iowa 2017) (citation omitted) ("As

a corollary to this principle, when a statute defines a term, 'the common law and dictionary definitions which may not coincide with the legislative definition must yield to the language of the legislature.'" (citation omitted)).

We also remember that private property rights are expressly protected by both the Constitution of the United States and the Constitution of the State of Iowa. *See Clarke Cnty. Reservoir Comm'n v. Robins*, 862 N.W.2d 166, 171 (Iowa 2015). One implication is that state agencies may "only" condemn private property for public use "by express authorization of the legislature." *Id.* (citation omitted). And statutes authorizing condemnation are "strictly construed" against the government and in favor of the property owner. *Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 208 (Iowa 2014).

With these principles in mind, we turn to the words of Chapter 6B. Section 6B.2B requires:

> [t]he acquiring agency [to] make a good faith effort to negotiate with the owner to purchase the private property or **property interest** before filing an application for condemnation or otherwise proceeding with the condemnation process. An acquiring agency shall not make an offer to purchase the property or **property interest** that is less than the fair market value the acquiring agency has established for the property or **property interest** pursuant to the appraisal required in section 6B.45 . . . .

(Emphasis added.)

Section 6B.45 provides, in part:

> When any real property or **interest in real property** is to be purchased, or in lieu thereof to be condemned, the acquiring agency or its agent shall submit to the person, corporation, or entity whose property or interest in the property is to be taken, by ordinary mail, at least ten days prior to the date upon which the acquiring agency or its agent contacts the property owner to commence negotiations, a copy of the appraisal in its entirety upon such real property or **interest in such real property** prepared for the acquiring agency or

its agent, which shall include, at a minimum, an itemization of the appraised value of the real property or **interest in the property**, any buildings on the property, all other improvements including fences, severance damages, and loss of access.

(Emphasis added.)

Lastly, section 6B.54(3) provides, in part:

Before the initiation of negotiations for **real property**, the acquiring agency shall establish an amount which it believes to be just compensation for **the real property**, and shall make a prompt offer to acquire the property for the full amount established by the agency. In no event shall the amount be less than the fair market value the acquiring agency has established for the property or **property interest** pursuant to the appraisal required in section 6B.45 . . . .

(Emphasis added.)

We begin our analysis by considering the district court's views. The district court concluded that the Trust's possibility of reverter is a property interest of sufficient dignity to provide the Trust "a right to bring an action" under section 6A.24, which authorizes "[a]n owner of property described in an application for condemnation" to "bring an action challenging . . . condemnation proceedings." Iowa Code § 6A.24(1). The court also acknowledged that section 6B.2B "references negotiating with the owner of private property or property interest prior to instituting condemnation proceedings." Even so, the court concluded the Trust's possibility of reverter "is not sufficient to have required" Tiffin to provide the Trust with a separate appraisal. The court explained:

Iowa Code § 6B.54(3) provides that the acquiring agency shall establish "an amount" it believes to be just compensation "for the real property," and § 6B.54(3) also provides that "the amount" shall not be less than the fair market value the acquiring agency has established for the property or the property interest pursuant to the appraisal required in § 6B.45. Nothing in chapter 6B requires

separate valuations for a property owner and a party who holds the possibility of reverter.

We agree on some points but not others. We agree that chapter 6B does not expressly use the phrase "possibility of reverter." As noted, though, the district court found—and Tiffin does not dispute—a possibility of reverter is a property interest of sufficient dignity to permit its holder to contest the condemnation of land.[5] Moreover, at oral argument, Tiffin confirmed that the Trust's possibility of reverter is a property interest and an interest in real property. We think it follows that the Trust's possibility of reverter qualifies as a "property interest" for purposes of sections 6B.2B, 6B.45, and 6B.54(3); an "interest in real property" for purposes of section 6B.45; and "real property" for purposes of section 6B.54(3).[6] It would

---

[5] Tiffin also concedes that, in a condemnation proceeding, the compensation commission "has authority to apportion the award of damages" between the deed holder and the holder of a possibility of reverter. This lends support to the idea that an acquiring agency's pre-condemnation appraisal and offer should apportion separate dollar amounts to the deed holder and the holder of a possibility of reverter.

But Tiffin suggests that sometimes a "right of reversion is so remote and speculative" that "it has no present value." Even if those facts were presented, we are not sure they would change our conclusion that the Trust's possibility of reverter is a "property interest" for purposes of sections 6B.2B, 6B.45, and 6B.54(3); an "interest in real property" for purpose of section 6B.45; and "real property" for purposes of section 6B.54(3). But we need not—and do not—decide that issue because the record does not show the Trust's possibility of reverter is "so remote and speculative as to be without present value." 29A C.J.S. *Eminent Domain* § 229 (2021).

[6] While the term "real property" may connote ground and other physical items, Black's Law Dictionary explains that "[r]eal property can be either corporeal (soil and buildings) or incorporeal (easements)." *Real Property*, *Black's Law Dictionary* (11th ed. 2019); *see also Gray v. Osborn*, 739 N.W.2d 855, 861 (Iowa 2007) ("Because an easement is an interest in real property, any express easement falls within the statute of frauds and must be in writing."). This is consistent with section 4.1(13), which defines "real property" to "include lands, tenements, hereditaments, and *all rights thereto and interests therein*, equitable as well as legal." (Emphasis added.)

also seem to follow that the Trust is entitled to all of the rights afforded by those provisions, including an appraisal and offer for the property interest Tiffin seeks to acquire from the Trust.

As the district court noted, however, these provisions sometimes use the singular. For example, section 6B.45 refers to "the appraisal." From this, Tiffin infers that only one appraisal and one offer are required no matter how many property interests Tiffin seeks to condemn. We disagree. Throughout the Iowa Code, "the singular" generally "includes the plural." Iowa Code § 4.1(17). This "caution[s] us against reading too much into the presence of" singular terms—such as "the"—in Chapter 6B. *See Porter v. Harden*, 891 N.W.2d 420, 426 (Iowa 2017) (noting section 4.1(17) "should caution us against reading too much into the presence of the words 'a' or 'an' in a statute depending on the context").

Instead, we think the more natural reading is that sections 6B.2B, 6B.45, and 6B.54(3) apply as written to *each* separately-owned property interest that is subject to condemnation. So, for each interest Tiffin wishes to acquire, Tiffin must obtain "the appraisal" for that "interest in . . . real property," *see* Iowa Code § 6B.45; Tiffin must "make a prompt offer to acquire the property," *see id.* § 6B.54(3); and Tiffin must "make a good faith effort to negotiate with the owner" of the property interest, *see id.* § 6B.2B.

To illustrate, suppose Tiffin decides to acquire A's property interest in 2021; and then, five years later, in 2026, Tiffin decides to acquire B's property interest. We think most would agree that Tiffin would be required to (1) provide an appraisal and an offer to A in 2021, and then (2) provide an appraisal and an offer to B in 2026. Now suppose instead that Tiffin decided to acquire both A's property interest

and B's property interest simultaneously. We see no reason to think this would reduce the rights of A or B. Rather, we think separate owners of separate property interests would still be entitled to separate appraisals and separate offers, regardless of the government's chosen timing. So even if Tiffin tries to obtain both property interests at the same time, Tiffin must (1) provide an appraisal and an offer to A, and (2) provide an appraisal and an offer to B. And so, when Tiffin sought to obtain the separate property interests owned by the Trust and Coralville, Tiffin should have provided the Trust with an appraisal and an offer for *its* separate property interest.

We think this reading is more consistent with the Code than Tiffin's view, under which Coralville and the Trust must *share* an appraisal and offer that do not specify any particular dollar amount for either of their respective property interests. Under Tiffin's view, the Trust—"the . . . entity whose . . . interest in the property is to be taken" through condemnation of the possibility of reverter—does not actually receive an appraisal of *its* property interest, despite the requirements of section 6B.45. Worse yet, the Trust receives no real "offer"[7]—no statement of an amount Tiffin is willing to pay—to purchase *the Trust's* property interest, despite the requirements of sections 6B.2B and 6B.54(3). We cannot square these outcomes with the language of the Code, especially when it is strictly construed to protect private property rights and prevent eminent domain abuse. *See, e.g.*, *City of Des Moines v. Geller Glass & Upholstery, Inc.*, 319 N.W.2d 239, 242 (Iowa 1982)

---

[7] Black's Law Dictionary defines "offer" as: "The act or an instance of presenting something for acceptance; specif[ically], a statement that one is willing to do something for another person or to give that person something[, i.e.] the prosecutor's offer of immunity." *Offer, Black's Law Dictionary* (11th ed. 2019).

("The statutory provisions regulating the exercise of the power of eminent domain must be strictly complied with and they are construed strictly to protect the constitutional property rights of the owner.").

**IV. Conclusion**

Before Tiffin can initiate proceedings to condemn the Trust's property interest, Tiffin must comply with sections 6B.2B, 6B.45, and 6B.54(3) by providing the Trust with an appraisal and offer for the Trust's property interest. Tiffin's prior appraisal did not meet these requirements because it did not state a value for the Trust's property interest. And Tiffin's prior offer did not meet these requirements because it did not offer an amount for the Trust's property interest.

The district court erred in dismissing the Trust's petition for certiorari. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**