# IN THE COURT OF APPEALS OF IOWA

No. 22-1013
Filed July 3, 2024

**JOHN J. GRILLION and MICHELLE A. CIESLUK,**
        Plaintiffs-Appellees,

**vs.**

**KELLY J. HASSLER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County,
Greg W. Steensland, Judge.


        A civil defendant appeals the district court's findings of a boundary by
acquiescence and easement by prescription.  **REVERSED AND REMANDED.**


        Robert M. Livingston of Stuart Tinley Law Firm, LLP, Council Bluffs, for
appellant.

        Steven H. Krohn of Smith, Peterson Law Firm, LLP, Council Bluffs, for
appellees.


        Considered by Badding, P.J., Buller, J., and Bower, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2024).

**BULLER, Judge.**

This case arises from a boundary dispute between two neighbors: one with a six-acre plot of land and one with a thirty-four-acre plot. John Grillion and Michelle Ciesulk own the six-acre plot and petitioned to quiet title land along the border of the thirty-four acre plot owned by Kelly Hassler. The district court ruled in favor of Grillion and Ciesulk, finding a boundary by acquiescence on Hassler's property and that Grillion and Ciesulk had an easement by prescription to use the disputed land. In light of recent supreme court precedent, we reverse and remand.

**I.      Background Facts and Proceedings**

Hassler and Ciesulk are sisters living in Council Bluffs. In 1982, Hassler bought a home and six acres of land with her husband, Bob. Bob's parents bought the thirty-four-acre plot to the west of the six-acre plot in 2000. An access road existed at the eastern edge of the thirty-four-acre plot since at least 2001, and the Hasslers used it to maintain their property.

Before Bob's parents bought the thirty-four acre plot, a fence ran from the north to south boundary between the plots, overlaying the correct legal boundaries. But the Hasslers removed this fencing between 2000 and 2015 to facilitate gathering hay and harvesting sweet corn. A few posts remained on the property from the original boundary fence.

Bob's parents gifted the thirty-four-acre property to the Hasslers in 2012, meaning the Hasslers then owned both parcels. The family continued using the access road for various purposes, such as for bringing friends on hayrack rides. In 2015, Bob died. And Hassler's children and a group of local volunteers built a new horse-barrier fence around most of the thirty-four-acre property, with the

eastern border of the fence running on the near side of the access road. Hassler then sold the six-acre plot to Grillion and Ciesulk in 2017 without mentioning the legal boundaries of the properties.

After buying the property, Grillion and Ciesulk treated the horse-barrier fence as the boundary line between the properties and maintained the property east of the horse-barrier fence. Hassler never stopped the two from using this area as their own, and she thanked them for taking such good care of the property.

Grillion and Ciesulk also used the access road for the next four years. They spent substantial time on the road to maintain their own property, as they feared running heavy equipment on their driveway would damage their septic system. Grillion and Ciesulk never asked for permission to use the access road, but Hassler let them because they were on "good terms." Grillion and Ciesulk also asked and received permission from Hassler for one of their tenants to use the access road, but it was unclear when.

Hassler notified Ciesulk in 2021 that she intended to hire a land surveyor to demarcate the proper line between the properties. And several months later, she moved the fence back to the legal boundary line. This change functionally decreased the area of Grillion and Ciesulk's property to 5.85 acres and prevented their use of the access road.

Grillion and Ciesulk filed a petition to quiet title, alleging the fence between the properties was the rightful boundary by acquiescence because it had been treated as such for more than ten years. Following trial in February 2022, the district court found that Grillion and Ciesulk established a boundary by acquiescence and that a prescription by easement existed on the access road.

Hassler appeals. Because the case was tried in equity, we review de novo. *See Albert v. Conger*, 886 N.W.2d 877, 879–80 (Iowa Ct. App. 2016) .

## II. Discussion

After briefing and transfer to our court, the supreme court granted further review in a case addressing the same issue before us: the effect a period of common ownership has on boundaries between adjacent properties. *See generally Sundance Land Co., LLC v. Remmark*, __ N.W.3d ___, 2024 WL 2982688 (Iowa 2024). We held this case pending the supreme court's decision, hoping to avoid the parties receiving a decision from us potentially conflicting with the supreme court or leading to further review (and more delays) before resolution. We conclude *Sundance* controls our analysis here.

The *Sundance* court examined cases relating to common ownership and easements, observing: "[T]he need for the easement generally goes away under common ownership. . . . Hence, it is logical to require reestablishment of the easement . . . when separate ownership resumes." *Id.* at ___, 2024 WL 2982688, at *6. Thus "easements are extinguished when the dominant and servient estates merge[;] it would be both illogical and impossible to create an easement for the benefit of the same land which the easement burdens." *Gray v. Osborn*, 739 N.W.2d 855, 862 (Iowa 2007).

The *Sundance* court applied the same logic to boundaries by acquiescence. __ N.W.3d at ___, 2024 WL 2982688, at *7. "[C]ommon ownership eradicates potentially acquiesced boundaries between the two properties other than the legally established ones." *Id.* at ___, 2024 WL 2982688, at *10. "[W]here, as here, a common grantor conveys adjoining properties, the relevant inquiry is not whether

there had been a boundary previously established by acquiescence but instead what boundary the common grantor set when conveying the properties." *Id.* at ___, 2024 WL 2982688, at *11 (McDonald, J., concurring) ("These determinations implicate, among other things, contract law, the common grantor rule, the law of estoppel, and the law of easement by implication rather than the law of boundary by acquiescence."). In short, common ownership unwinds boundary-by-acquiescence and prescriptive-easement claims, and transfer to separate owners is necessary to re-start the clock.

Here, the Hasslers owned both parcels from 2012 until 2017. Iowa Code section 650.6 (2021) requires the alleged boundary to "have been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years." A prescriptive easement also must have been in use for ten years or more. *Brede v. Koop*, 706 N.W.2d 824, 828 (Iowa 2005). Applying *Sundance*, Hassler's common ownership of both parcels unwound any previous prescriptive easement or boundary by acquiescence, restarting the required ten-year periods in 2017 when the parcels were once again under separate ownership. *See* __ N.W.3d at ___, 2024 WL 2982688, at *7–8 ("We think the phrasing [of Iowa Code section 650.6] requires separate grantors in the chain of title from when ever the ten-year period starts through the present."). As a result, the earliest a prescriptive easement or boundary by acquiescence might again be established is 2027. And since there was not a prescriptive easement or boundary by acquiescence as of the 2022 trial, the district court erred in concluding otherwise. We reverse and remand for further proceedings consistent with this opinion and *Sundance.*

**REVERSED AND REMANDED.**