# IN THE SUPREME COURT OF IOWA

No. 14–0774

Filed April 10, 2015

**CLARKE COUNTY RESERVOIR COMMISSION,**

Appellee,

vs.

LINDA SUE ABBOTT, et al.,
 Defendants,

**EDWIN D. & DELORIS A. ROBINS REVOCABLE TRUST (SHEILA A. HARNED, LANNY ROBINS, DOUGLAS E. ROBINS) AND KYLE ROBINS,**

Appellants.

Appeal from the Iowa District Court for Clarke County, Sherman W. Phipps, Judge.

Landowners appeal district court's declaratory judgment under Iowa Code section 6A.24(2). **REVERSED AND REMANDED.**

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellants.

Ivan T. Webber of Ahlers & Cooney, P.C., Des Moines, for appellee.

**WATERMAN, Justice.**

This appeal presents two interrelated questions of first impression. The first question is whether a joint public-private commission organized under Iowa Code chapter 28E (2013) may exercise eminent domain powers. The second question is whether a declaratory judgment of public use under Iowa Code section 6A.24(2) obtained by such an entity may be affirmed on mootness grounds after the private members withdrew from the commission during the appeal. In this case, the Clarke County Reservoir Commission (the Commission) filed a declaratory judgment action seeking a ruling that its proposed project to build a public reservoir for drinking water was a public use that would allow the Commission to condemn private land. Landowners whose property was to be condemned for the project challenged the Commission's authority to proceed because the Commission included private members that lacked eminent domain authority. The district court rejected the landowners' challenge and entered judgment declaring the project is for a public use. The landowners appealed. The Commission argues the appeal was rendered moot when the private members withdrew.

The sovereign power to take private property from citizens without their consent is limited by our State and Federal Constitutions and legislative enactments. Property owners are entitled to strict compliance with legal requirements when a government entity wields the power of eminent domain. These legal requirements help protect against abuse of the eminent domain power. We strictly construe statutes delegating the power of eminent domain and note the absence of a clear legislative authorization for a joint public-private entity to condemn private property.

For the reasons elaborated below, we hold a 28E commission with members lacking the power of eminent domain cannot itself exercise the power of eminent domain or serve as an acquiring agency seeking a declaratory judgment under section 6A.24(2). We determine the postjudgment withdrawal of the private members did not render this appeal moot because the district court erred by entering judgment in favor of an improper acquiring agency. We therefore reverse the district court's declaratory judgment that the Commission, as then constituted, was a proper acquiring agency and remand the case for further proceedings.

## I. Background Facts and Proceedings.

On March 7, 2003, six agencies located in Clarke County filed a 28E agreement[1] with the Iowa Secretary of State, creating the Clarke County Reservoir Commission. The initial members of the Commission were the Osceola Waterworks Board of Trustees; the Southern Iowa Rural Water Association; Clarke County; and the cities of Osceola, Murray, and Woodburn. Section II(a) of the 28E agreement describes the purpose of the Commission:

> To make decisions in the locating, planning, and design of a new reservoir and regional recreation facility in Clarke County, Iowa. Multiple sites . . . will be investigated and pursued for feasibility and funding as multi-purpose reservoirs for flood control, erosion control, recreation and water supply purposes as agreed by the Commission.

---

[1]A 28E agreement, also called a Joint Exercise of Governmental Powers pursuant to Iowa Code chapter 28E, allows "state and local governments in Iowa to make efficient use of their powers by enabling them to provide joint services and facilities with other agencies and to cooperate in other ways of mutual advantage." Iowa Code § 28E.1.

The agreement also gave the Commission the power and responsibility to acquire funds for the new reservoir, pay any necessary expenses, and manage the new reservoir after its creation.

The Commission requested a report from H.R. Green, a professional engineering and technical consulting company, to determine the future water needs for the Clarke County area from 2008 to 2058. Mark Duben, a professional engineer, certified the results of that report to the Commission on March 6, 2008. The study showed that the area would require three million gallons per day (mgd) by 2037 and 4.4 mgd by 2058. At the time, the Iowa Department of Natural Resources rated the area's current water source, West Lake, for a capacity of 1.37 mgd. The study evaluated the feasibility of four alternative construction projects to meet the projected water shortfall: (1) a new reservoir, (2) a pipeline to buy water from the Des Moines Waterworks, (3) a pipeline to buy water from the Rathbun Regional Water Association, and (4) a groundwater well field.

In August, the Commission amended its 28E agreement to add three additional organizations to its membership: the Clarke County Conservation Board, the Clarke County Soil and Water Conservation District, and the Clarke County Development Corporation. The Clarke County Development Corporation is a section 501(*c*)(6) corporation, a private entity that lacks the power of eminent domain. The amendment also modified the language of section V(e), giving the Commission the power

> to acquire by purchase, gift, lease, use of eminent domain powers or otherwise real property and easements to be held in the name of the Commission, to hold and use for the purposes of the Commission and to dispose of property in the same manner as a city when no longer needed for the Commission. The Commission may acquire real property in

its own name or the Commission may request a Sponsor having the power of eminent domain to bring an eminent domain action to acquire real property on behalf of or for the use of the Commission, which the Sponsor shall do, provided, however, the Commission shall fully reimburse the Sponsor for all costs of acquisition including not only damages paid to the property owner but also all other administrative and related costs incurred by the Sponsor to complete acquisition through use of eminent domain.

The amendment further created section XI(a) of the agreement, which states:

The Commission shall acquire all necessary real, personal, and intangible property necessary for the public purposes set forth in this Intergovernmental Agreement, which shall be held in the name of the Clarke County Reservoir Commission. Such property may be acquired by sale, exchange, or by the exercise of the power of eminent domain as provided above.

H.R. Green updated its study in 2010 and again in 2014 to address regulatory changes that downgraded West Lake's rated capacity to .9 mgd and adjust for expected development that had not occurred. The updated studies concluded that Clarke County's water needs would remain approximately 3 mgd by 2037. The 2014 study called for development of new sources of water with a capacity of 2.2 mgd to meet needs and comply with state and federal regulations. After considering the feasibility of all the alternatives H.R. Green presented, the Commission decided to move ahead with plans to build a new reservoir.

The Commission held a public hearing regarding its intent to go forward with the reservoir by condemning land needed for the project. On December 6, 2012, the Commission adopted a "Resolution Authorizing Public Improvement Which May Require Acquisition of Agricultural Land," Resolution No. 2012-3. On March 5, 2013, the Commission filed a declaratory judgment action in the district court for Clarke County, seeking a declaration of public use, public purpose, or

public improvement under Iowa Code section 6A.24(2). The Commission served notice on the owners of fifty-four tracts of land required to complete the project.

On March 27, defendant, Edwin D. & Deloris A. Robins Revocable Trust (Robins Trust), owner of one of the parcels of land to be condemned, filed an answer to the petition.[2] The Robins Trust filed an amended and substituted answer on May 22. The amended answer alleged eleven affirmative defenses, including that the "[p]laintiff does not have the legal authority to initiate this condemnation proceeding under Iowa Code Section 6A.4." The amended answer also alleged the "[p]laintiff's real or intended purpose of the proposed lake is primarily for recreational use. The plaintiff's allegation of the proposed lake's purpose as a drinking water source is a false artifice." On January 10, 2014, the Robins Trust filed a motion for summary judgment on grounds that the Commission lacks the power of eminent domain because one of its members, the Clarke County Development Corporation, is a private entity lacking that power. The Commission filed a resistance, responding that the 28E agreement contemplated that the Commission would exercise eminent domain power directly. On March 3, 2014, the district court denied the motion for summary judgment and ruled that although the Clarke County Development Corporation lacked the power of eminent domain, the 28E agreement granted the Commission itself the power of eminent domain.

The case proceeded to a two-day bench trial commencing March 10 on the issue of whether the reservoir was a public use. The Commission

---

[2]Nineteen landowners filed answers to the initial petition. Only the Robins Trust and Kyle Robins are parties to this appeal. We refer to the appellants collectively as the Robins Trust.

called four witnesses. Duben testified about the report he prepared with H.R. Green verifying the water needs of the Clarke County area. He testified that the site was selected to provide the greatest capacity while keeping adequate distance from a confined animal feeding operation and a prairie remnant located in the watershed. He also testified that the Commission modified the Clarke County Water Supply Plan on September 12, 2013, to remove all plans for recreational activities. Without recreation areas, the 2013 water supply plan cost six million dollars less than the 2011 plan and required less land to complete. A financing expert, Scott Stevenson, testified that funding the project was feasible. Dan Lovett, an environmental engineer, testified that the Commission considered and rejected alternatives to the reservoir because of their greater environmental impact and expense. Finally, David Beck, project manager for the Commission, testified regarding the Commission's attempts to notify all landowners and plans to pay for the reservoir. The landowners called no witnesses. On April 8, the district court ruled for the Commission, concluding the project qualified as a public use within the meaning of Iowa Code section 6A.22(2).

The Robins Trust filed its notice of appeal on May 6 and its appellate proof brief on July 24. The sole issue raised on appeal was that the district court erred by ruling the Commission with private members had eminent domain powers. On August 22, the Commission filed a motion to supplement the record and dismiss the appeal as moot. Attached to the motion is the "Amended and Restated Intergovernmental Agreement" filed with the Secretary of State on August 18 showing that the Clarke County Conservation Board, the Clarke County Development Corporation, and the Clarke County Soil and Water Conservation District

had withdrawn as members of the Commission.[3] Based on this reorganization, all current members of the Commission are public entities with the power of eminent domain. The Robins Trust resisted the motion to dismiss on legal grounds, but did not dispute the fact that the Commission no longer included any private members. We retained the appeal and ordered the motion to dismiss submitted with the appeal.

## II. Standard of Review.

The parties agree that our standard of review is for correction of errors at law. Iowa R. App. P. 6.907. "We review the district court's interpretation of a statute for correction of errors at law." *Star Equip., Ltd. v. State*, 843 N.W.2d 446, 451 (Iowa 2014). We review constitutional questions de novo. *Id.* Our review of an appeal from a declaratory judgment action is determined by how the case was tried in district court. *City of Riverdale v. Diercks*, 806 N.W.2d 643, 651 (Iowa 2011). The Commission filed this declaratory judgment as an action at law. The district court ruled on a motion for summary judgment filed by the Robins Trust and ruled on objections during the bench trial—indications the proceeding was treated as a law action in district court. Accordingly, our review of the declaratory judgment is for correction of errors at law. *See id.*

## III. Analysis.

We are asked to decide whether the district court's declaratory judgment on public use must be reversed because the Commission was not a proper party under Iowa Code section 6A.24. The Robins Trust

---

[3]Normally on appeal we cannot consider matters outside the trial court record. There is an exception to this general rule for mootness issues. "Matters that are technically outside the record may be submitted in order to establish or counter a claim of mootness." *In re L.H.*, 480 N.W.2d 43, 45 (Iowa 1992)).

argues that allowing a private entity to exercise the public power of eminent domain jointly with public entities violates chapter 28E of the Iowa Code, the Federal and State Constitutions, and our caselaw and that the remedy is to vacate the declaratory judgment. The Commission argues that the issue is moot because all members of the Commission lacking the power of eminent domain withdrew from the Commission during the pendency of this appeal. Alternatively, the Commission argues it could exercise the power of eminent domain even if its membership at that time included private entities lacking that power. To place these issues in context, we begin with an overview of the power of eminent domain. Next, we address whether the Commission's postjudgment reorganization rendered the issue moot. Because we conclude the issue is not moot, we then turn to the question of whether a 28E entity with both public and private members can validly exercise the power of eminent domain. We answer that question "no."

**A. Eminent Domain.** The power to take private property for public use "is an attribute of sovereignty which may be delegated only by express authorization of the legislature." *Hardy v. Grant Twp. Trs.*, 357 N.W.2d 623, 625 (Iowa 1984). "Statutes that delegate the power of eminent domain 'should be strictly construed and restricted to their expression and intention.'" *Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 208 (Iowa 2014) (quoting *Hardy*, 357 N.W.2d at 626).

The Iowa Constitution limits the power of eminent domain by providing, "Private property shall not be taken for public use without just compensation first being made . . . ." Iowa Const. art. I, § 18. Similarly, the Fifth Amendment to the Federal Constitution provides, "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. The twin threshold requirements of public use

and just compensation are " 'designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole . . . .' " *Perkins v. Bd. of Supervisors*, 636 N.W.2d 58, 69–70 (Iowa 2001) (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S. Ct. 1563, 1569, 4 L. Ed. 2d 1554, 1561 (1960)). Justice O'Connor underscored the constitutional necessity that any taking be for a "public use" with "just compensation":

> These two limitations serve to protect the security of Property, which Alexander Hamilton described to the Philadelphia Convention as one of the great obj[ects] of Gov[ernment]. Together they ensure stable property ownership by providing safeguards against excessive, unpredictable, or unfair use of the government's eminent domain power—particularly against those owners who, for whatever reasons, may be unable to protect themselves in the political process against the majority's will.

*Kelo v. City of New London*, 545 U.S. 469, 496, 125 S. Ct. 2655, 2672, 162 L. Ed. 2d 439, 462 (2005) (O'Connor, J., dissenting) (citation and internal quotation marks omitted). The public-use requirement is to prevent abuse of the power for the benefit of private parties. *See id.* at 504–05, 125 S. Ct. at 2676–77, 162 L. Ed. 2d at 467.

Accordingly, we have long recognized the importance of strict compliance with statutory requirements for the exercise of eminent domain:

> Thus, where the right of eminent domain is invoked, the provisions of the law granting the right must be complied with. In some instances the statute or franchise authorizing the construction of the work prescribes a special procedure to facilitate acquiring property by condemnation; where such is not the case, condemnors are bound, of course, to proceed according to the provisions of the general laws. In any case, the extent to which the power of eminent domain may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained. Where, therefore, the state, a municipality, or other agent in charge of a public use, seeks to acquire, against the consent of the owner, private property for public use, the provisions of the

> authorizing law must be strictly complied with, and this must appear on the face of the proceedings for taking the land. In other words, the statutory procedure must be followed.

*Bourjaily v. Johnson County*, 167 N.W.2d 630, 633–34 (Iowa 1969) (internal quotation marks omitted). *See also Hawkeye Land Co.*, 847 N.W.2d at 218–19 (narrowly construing definition of "public utility" entitled to use eminent domain provision of railroad-crossing statute); *In re Condemnation of Land for Valley View Park Aquatic/Roadway*, 687 N.W.2d 103, 105 (Iowa 2004) (citing *Bourjaily* and strictly construing Iowa Code section 6B.57 to hold service on cotrustee for named and unnamed trusts that jointly owned land did not constitute notice to trusts unnamed in petition). We see no reason to retreat today from our long-standing approach mandating strict compliance with statutory requirements in eminent domain proceedings.

**B. The Declaratory Judgment Issue.** Iowa Code chapter 6A, entitled "Eminent Domain Law," codifies requirements for condemning private property for public use. Section 6A.24 provides for judicial review of eminent domain authority. *See* Iowa Code § 6A.24. This provision permits an "acquiring agency" to petition the court for a ruling that the proposed taking of private property is for a "public use, public purpose, or public improvement":

> *An acquiring agency* that proposes to acquire property by eminent domain may file a petition in district court seeking a determination and declaration that its finding of public use, public purpose, or public improvement necessary to support the taking meets the definition of those terms.

*Id.* § 6A.24(2) (emphasis added). Chapter 6B, entitled "Procedure Under Eminent Domain," defines "acquiring agency" as "the state of Iowa and any person or entity conferred the right by statute to condemn private

property or to otherwise exercise the power of eminent domain." *Id.* § 6B.1(2).

The Commission filed its petition under section 6A.24(2) and sought a judicial declaration that the proposed reservoir met the public-use requirement for eminent domain. The Robins Trust, by motion for summary judgment, raised a threshold challenge in district court, arguing the Commission was not a proper acquiring agency because it included private members that lacked eminent domain authority. The district court denied that motion and ruled the Commission was a proper party. The landowners also litigated and lost the issue whether the reservoir was for a public use. We next address the Commission's argument that this appeal is moot.

**C. Mootness.** At the time the district court entered its declaratory judgment, the Commission still included private members. As noted, the private members withdrew after the Robins Trust filed its notice of appeal. The Commission argues the declaratory judgment is valid because the postjudgment reorganization rendered moot the challenge to its authority to exercise eminent domain powers. The Robins Trust argues the Commission was not a proper party plaintiff or acquiring agency under section 6A.24(2) when it filed and obtained the declaratory judgment, which constitutes a fatal procedural flaw that taints the proceedings and requires the judgment to be vacated. The Robins Trust contends the Commission cannot cure this flaw belatedly by the postjudgment withdrawal of the private members. Paradoxically, we cannot determine whether the appeal is moot without deciding whether the alleged defects in the status of the Commission as the acquiring agency are fatal to the judgment or rather can be cured on appeal.

"An appeal is moot if it no longer presents a justiciable controversy because [the contested issue] has become academic or nonexistent. The test is whether the court's opinion would be of force or effect in the underlying controversy. As a general rule, we will dismiss an appeal when judgment, if rendered, will have no practical legal effect upon the existing controversy."

*In re Guardianship of Kennedy*, 845 N.W.2d 707, 710–11 (Iowa 2014) (quoting *In re M.T.*, 625 N.W.2d 702, 704 (Iowa 2001)). "Mootness is not a question of power but rather one of restraint." *Rush v. Ray*, 332 N.W.2d 325, 326 (Iowa 1983).

In *Lewis Investments, Inc. v. City of Iowa City*, we rejected a mootness challenge raised on appeal in a condemnation action. 703 N.W.2d 180, 183–84 (Iowa 2005). In that case, the city sought to condemn a residential building as a public nuisance. *Id* at 182. The owner filed an action seeking a temporary and permanent injunction, alleging lack of due process because it was denied an evidentiary hearing before an independent body before the city declared the building a public nuisance. *Id.* at 183. The district court denied the temporary injunction, and the city proceeded with the condemnation. *Id.* We permitted the owner to file an interlocutory appeal of the injunction ruling. *Id.* at 183. Meanwhile, the condemnation hearing was held, and the compensation commission awarded $259,000 to the owner for the property. *Id.* The city deposited that amount with the sheriff, secured the property, and cleaned it up in anticipation of sale. *Id.* Based on those events, the city moved to dismiss the appeal from the injunction ruling as moot. *Id.* We rejected the mootness claim, noting the property had not yet been sold to a third party and that the court could still restore the parties to their former positions. *Id.* at 184. We distinguished caselaw in which a challenged roadway had been completed before submission of the appeal. *Id.* at 183–84 (distinguishing *Welton v. Iowa State Highway Comm'n*, 227

N.W. 332, 333 (Iowa 1929)). Similarly, the proposed reservoir challenged by the landowners in this case has not been built, nor has the property been acquired by the Commission through eminent domain. It is not too late to decide the issue presented in this appeal.

All of the current members of the Commission have the power of eminent domain by statute.[4] But, the Commission included private members at the time it filed its petition seeking a declaration of public use under Iowa Code section 6A.24, at the time the district court ruled on summary judgment, at the time the case was tried to the court, and at the time the district court entered its declaratory judgment. The Robins Trust argues the Commission was improperly constituted at the critical phases of these proceedings and that resulting taint cannot be cured retroactively by the postjudgment reorganization.

Under Iowa Code section 6A.24(2), a declaratory action may only be filed by "an acquiring agency." The fighting issue below is whether the Commission had eminent domain authority while it included private members. Can we avoid deciding that issue by holding the postjudgment withdrawal of the private entities cured the alleged defect in the proceedings?

The Commission has cited no authority, and we found none, holding that an appeal of a ruling in favor of an improper party exercising eminent domain powers can be rendered moot by substituting a proper party during the appeal. We are unable to conclude that the issue appealed by the Robins Trust—whether the Commission as

[4]Clarke County's power of eminent domain is provided by Iowa Code section 6A.4(1). The cities' power is provided by section 6A.4(6). The power of the waterworks board is found in section 388.4(2). The Rural Water Association's eminent domain power is provided by section 357A.11(5).

constituted in district court had the power of eminent domain—is now a "merely academic issue," the resolution of which "would have no effect on the underlying dispute." *See In re Trust No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013) (rejecting mootness challenge in appeal from failure to provide accounting, even though belated accounting was completed before submission of appeal, because resolution of right to accounting affected claim for recovery of attorney fees).

We conclude that the appeal is not moot and proceed to address the merits of the issue raised by the Robins Trust.

**D. Whether a 28E Entity with Both Public and Private Members Can Properly Bring an Action Under Iowa Code Section 6A.24(2).**  Generally, a 28E agreement

> purports to authorize any political subdivision of the State of Iowa and certain agencies of the state or federal government to join together to perform certain public services and by agreement create a separate legal or administrative entity to render that service.

*Goreham v. Des Moines Metro. Area Solid Waste Agency*, 179 N.W.2d 449, 453 (Iowa 1970).  The statute allows for the joint exercise of powers:

> Any power or powers, privileges or authority exercised or capable of exercise by a public agency of this state may be exercised and enjoyed jointly with any other public agency of this state having such power or powers, privilege or authority, and jointly with any public agency of any other state or of the United States to the extent that laws of such other state or of the United States permit such joint exercise or enjoyment.  Any agency of the state government when acting jointly with any public agency may exercise and enjoy all of the powers, privileges and authority conferred by this chapter upon a public agency.

Iowa Code § 28E.3.  Further, private entities may enter into 28E agreements with public entities "for joint or cooperative action" pursuant to the agreement.  *Id.* at § 28E.4.  Yet, chapter 28E does not expressly

address whether or how private entities may participate in a 28E agreement exercising a public power that the private entity lacks.

The Robins Trust relies on two cases to support its contention that the Commission with private members cannot exercise the power of eminent domain. The first is *Goreham,* a case considering whether a 28E agency composed entirely of public members could issue revenue bonds. 179 N.W.2d at 451. After examining the nature of 28E agreements and noting the constitutional avoidance doctrine, we concluded that

> this legislation must be interpreted with reference to the power or powers which the contracting governmental units already have. The pre-existing powers contain their own guidelines. The legal creation of a new body corporate and politic to jointly exercise and perform the powers and responsibilities of the cooperating governmental unit would not be unconstitutional so long as the new body politic is doing only what its cooperating members already have the power to do.

*Id.* at 455. In *Barnes v. Department of Housing and Urban Development,* we answered a question certified to us by the United States District Court for the Northern District of Iowa regarding the approval requirements for regional housing authorities established under chapter 28E. 341 N.W.2d 766, 766–67 (Iowa 1983). We noted that "[c]hapter 28E . . . does not confer any additional powers on the cooperating agencies; it merely provides for their joint exercise." *Id.* at 767. We concluded "the powers exercised by those municipalities in connection with this project are not independent powers arising under chapter 28E but a joint exercise of powers already vested in the members." *Id.* at 768. Neither *Goreham* nor *Barnes,* however, involved eminent domain or a 28E entity with private members lacking the power to be exercised jointly. The cases are instructive but not controlling.

We recently reiterated that only proper parties may exercise eminent domain powers. In *Hawkeye Land Co.*, the Iowa Utilities Board (IUB) allowed an independent transmission company, ITC Midwest, to utilize a statutory pay-and-go procedure to run electrical transmission lines across a railroad over a property owner's objection—a form of eminent domain. 847 N.W.2d at 201. The owner of the railroad-crossing easement appealed, and the district court affirmed the IUB's determination. *Id.* The pay-and-go procedure in Iowa Code section 476.27 was only available to a "public utility." *Id.* at 213. We held that ITC Midwest did not meet the definition of a public utility and, therefore, was the wrong party to use the eminent domain statute. *Id.* at 219. Our conclusion led us to reverse the district court and remand for an order vacating the IUB's decision. *Id.* Similarly, if we determine that the Commission, as constituted in the district court, was not a proper party to bring an action for a declaration of public use, we must reverse the district court's declaratory judgment.

The Commission relies on *Weiss v. City of Denison*, in which a school district and a city entered into a 28E agreement, and then the city used its power of eminent domain to acquire land it transferred to the school district. 491 N.W.2d 805, 807–08 (Iowa 1992). We concluded that the city acted properly, condemning the land by its own power of eminent domain and after having done so, was free to transfer the property to the 28E entity. *Id.* Although *Weiss* remains good law, the case is inapposite because here the Commission itself filed the action seeking the declaration of public use, rather than having one of its public members do so.

The Commission argues that the 28E agreement itself grants the Commission the power of eminent domain. We disagree. Only the

legislature has the authority to delegate the power of eminent domain, and the members of the Commission cannot grant or delegate their own powers of eminent domain to the Commission but, rather, may only exercise their individual powers jointly. *Barnes*, 341 N.W.2d at 768; *Goreham*, 179 N.W.2d at 455. The Commission further argues we should liberally construe chapter 28E to achieve efficiency. The legislature's directive to construe chapter 28E liberally, however, is to promote *governmental* efficiency:

> The purpose of this chapter is to permit state and local governments in Iowa to make efficient use of their powers by enabling them to provide joint services and facilities with other agencies and to cooperate in other ways of mutual advantage. This chapter shall be liberally construed to that end.

Iowa Code § 28E.1. The Commission's argument begs the question whether *private* entities may exercise eminent domain powers jointly with public entities in a 28E agreement. We will not infer such powers when chapter 28E is silent on that point. *See Hawkeye Land*, 847 N.W.2d at 208, 219 (strictly construing statutes delegating the power of eminent domain and holding only parties expressly authorized by the legislature could utilize statutory procedure to acquire property over owner's objection). We may not read new powers into chapter 28E in the guise of interpretation. A contrary holding would effectively enable private entities to exercise eminent domain powers through a 28E entity. Private entities are not accountable to voters. "Liberty requires accountability." *Dep't of Transp. v. Ass'n of Am. R.R.s*, ___ U.S., ___, 135 S. Ct. 1225, 1234, ___ L. Ed. 2d ___, ___ (2015) (Alito, J., concurring). Delegating governmental powers to quasi-public entities raises constitutional questions. *Cf. id.* at ___, 135 S. Ct. at 1239–40, ___ L. Ed. 2d at ___ (describing constitutional problems with delegating governmental powers

to private entity, but concluding Amtrak is a government entity for purposes of developing standards for use of private railroad tracks). If the legislature wanted to grant eminent domain powers to 28E entities that include private members, it could have said so explicitly. Policy arguments in favor of granting eminent domain powers to joint private-public entities should be directed to the legislature.

No statute expressly allows a private entity to exercise the power of eminent domain jointly through a 28E agreement. As we concluded in *Goreham* and *Barnes*, a 28E agreement confers no new powers on the entities involved, but only allows for the joint exercise of existing powers. *Barnes*, 341 N.W.2d at 768; *Goreham*, 179 N.W.2d at 455. We hold that a 28E entity with private members lacks the power of eminent domain. Therefore, we conclude that the Commission did not have the power of eminent domain at the time the district court entered its declaratory judgment. Accordingly, it was not a proper acquiring agency under Iowa Code section 6A.24(2). The district court erred by allowing the declaratory action to proceed to judgment with a plaintiff that was not a proper acquiring agency. This error requires us to reverse the declaratory judgment. *See Hawkeye Land*, 847 N.W.2d at 219 (reversing district court judgment and remanding for order vacating IUB decision that erroneously allowed improper party to use pay-and-go railroad-crossing statute); *In re Condemnation of Land for Valley View Park Aquatic/Roadway,* 687 N.W.2d at 106 (reversing judgment apportioning condemnation award due to failure to name proper parties); c*f. In re Clement Trust,* 679 N.W.2d 31, 38–39 (Iowa 2004) (vacating final judgment on claims for which plaintiff lacked standing); *Wilson v. City of Iowa City,* 165 N.W.2d 813, 824–25 (Iowa 1969) (modifying district

court's decree to declare void resolutions of city council invalidated by votes of disqualified council member).

We reject the Commission's argument that the appeal should be dismissed because the withdrawal of its private members removes any question that the Commission, as reorganized now, has eminent domain powers. Dismissal of the appeal would leave in place the district court's existing declaratory judgment. That declaratory judgment could have ongoing significance. The legislature knows how to excuse strict compliance with statutory requirements when it chooses. For example, Iowa Code section 6B.57 addresses an acquiring agency's good-faith failure to comply with requirements to notify property owners:

> If an acquiring agency makes a good faith effort to serve, send, or provide the notices or documents required under this chapter to the owner and any contract purchaser of private property that is or may be the subject of condemnation, or to any tenant known to be occupying such property if notices or documents are required to be served, sent, or provided to such a person, but fails to provide the notice or documents to the owner and any contract purchaser, or to any tenant known to be occupying the property if applicable, such failure shall not constitute grounds for invalidation of the condemnation proceeding if the chief judge of the judicial district determines that such failure can be corrected by delaying the condemnation proceedings to allow compliance with the requirement or such failure does not unreasonably prejudice the owner or any contract purchaser.

Iowa Code § 6B.57. The legislature, however, has not enacted such a provision to excuse defects in the composition of an acquiring agency. We will not write such a provision into the statute in the guise of interpretation.

Finally, the Commission argues that even if we hold it was an improper party below, the district court's declaratory judgment of public use will remain binding on the defendants who litigated and lost that

issue under the doctrine of issue preclusion or claim preclusion in future proceedings. We disagree. Issue preclusion, a form of res judicata, is based on a prior *judgment. See Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 103–04 (Iowa 2011). So, too, is claim preclusion. *See Fennelly v. A-1 Mach. & Tool Co.,* 728 N.W.2d 181, 186 (Iowa 2007). A judgment, once reversed or vacated, no longer has preclusive effect. *Id.* (noting reversal of prior judgment defeated its preclusive effect). Nor does the law-of-the-case doctrine apply to preclude the parties from relitigating the public-use issue or require them to do so on remand. The law-of-the-case doctrine applies to issues raised and decided on appeal. *See Cawthorn v. Catholic Health Initiatives*, 806 N.W.2d 282, 286 (Iowa 2011); *see also Wolfe v. Graether,* 389 N.W.2d 643, 651 (Iowa 1986) (contrasting res judicata and law of the case).[5] The only issue raised by the Robins Trust in this appeal was the composition of the Commission. We are reversing the declaratory judgment on that ground alone. The Robins Trust in this appeal did not otherwise challenge the district court's public-use determination, and we do not reach that issue.

## IV. Disposition.

For the foregoing reasons, we reverse the declaratory judgment of the district court and remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except Wiggins, J., who dissents.

---

[5]We are not dealing here with the law-of-the-case implications of a district court ruling that was not appealed. *See, e.g.*, *Nutting v. Zieser*, 482 N.W.2d 424, 425–26 (Iowa 1992) (noting how decision interpreting dram statute was "saddled with the law of the case implications of the district court's unappealed ruling"). Rather, the Robins Trust appealed the declaratory judgment, which we reverse on this appeal.

#14–0774, *Clarke Cnty. Reservoir Comm'n v. Robins Revocable Trust*

**WIGGINS, Justice (dissenting).**

I agree with the majority's analysis of our eminent domain law, but disagree with the court's resolution. The majority's mootness analysis is unnecessary because this case does not implicate the mootness doctrine.

The majority is correct in its conclusion that when the Clarke County Reservoir Commission began its condemnation proceeding it did not have the authority under Iowa law to do so because it was not a properly constituted acquiring agency under Iowa Code section 6A.24(2) (2013). I also agree with the majority's analysis stating that "we have long recognized the importance of strict compliance with statutory requirements for the exercise of eminent domain." However, in its analysis the majority chooses to talk about these principles in terms of mootness, and then remands the case for further proceedings. I find this analysis and outcome unnecessary under this record. I would simply reverse the decision without remanding the case back to the district court on the ground the condemnation proceeding was flawed from the beginning.

The Code provides: "The procedure for the condemnation of private property for works of internal improvement, and for other public projects, uses, or purposes, unless and except as otherwise provided by law, shall be in accordance with the provisions of this chapter." Iowa Code § 6B.1A. Section 6B.2A provides the procedure for commencing a condemnation proceeding:

> An acquiring agency shall provide written notice of a public hearing to each owner and any contract purchaser of record of agricultural land that may be the subject of condemnation. The authority under this chapter is not conferred and *condemnation proceedings shall not begin* unless a good faith effort is made to mail and publish the

> notice as provided in this section on the owner and any contract purchaser of record of the property subject to condemnation.

*Id.* § 6B.2A(1) (emphasis added).

When the Commission began the condemnation by mailing the notice of public hearing it was not an acquiring agency. Thus, an acquiring agency did not send a notice of public hearing under section 6B.2A. Therefore, any action by the Commission after the flawed notice is invalid. Accordingly, the Commission cannot cure this defect by reconstituting the commission, because a valid acquiring authority was required to serve notice under section 6B.2A.

The majority does not reach this issue, presumably because the parties did not argue this issue in this manner. On remand, I do not think the acquiring agency can cure this defect. The prudent way to proceed would be to start the proceedings with a proper acquiring agency, rather than attempting to fix the defect in the proceedings and spend the time and resources pursuing another appeal. By starting over, the acquiring agency lifts the uncertainty created by this defect and the condemnation can occur sooner rather than later. Consequently, I think we should find the condemnation proceeding is invalid and reverse the judgment of the district court.