# IN THE COURT OF APPEALS OF IOWA

No. 19-1590
Filed December 16, 2020

**ANDREAS C.K. BENFORD,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Jasper County, Randy V. Hefner,

Judge.


        Andreas Benford appeals the dismissal of his application for postconviction

relief. **APPEAL DISMISSED.**


        Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

        Thomas J. Miller, Attorney General, and John R. Lundquist, Assistant

Attorney General, for appellee State.


        Considered by Bower, C.J., and May and Ahlers, JJ.

**MAY, Judge.**

Andreas Benford appeals the dismissal of his application for postconviction relief (PCR). The State argues that, because Benford has now been released from prison, this appeal is moot. We agree and dismiss.

**I. Background**

In July 2009, Benford pled guilty to third-degree sexual abuse and enticing away a minor. *See* Iowa Code §§ 709.4(2)(c)(4), 710.10(2) (2009). The same day, the district court sentenced Benford to incarceration. The court also imposed the special sentence required by Iowa Code section 903B.1. It provides that certain sex offenders

> shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906. The board of parole shall determine whether the person should be released on parole or placed in a work release program. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole or work release. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and chapter 908, and rules adopted under those chapters for persons on parole or work release. The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation. A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.

Benford took no direct appeal. But in the years since, he has repeatedly sought judicial review of issues related to his sentences. Two of those cases ended in appeals to this court. *See Benford v. State*, No. 17-1253, 2018 WL

3912118, *1 (Iowa Ct. App. Aug. 15, 2018) (denying Benford relief); *Benford v. Iowa Dist. Ct.*, No. 17-0272, 2018 WL 1433123, at *2 (Iowa Ct. App. Mar. 21, 2018) (deciding Benford's constitutional challenge was not ripe for adjudication and annulling the writ of certiorari).

The present case began when Bedford filed a PCR application in May 2018.[1] Benford challenged his April 2018 revocation from special sentence release. In August 2019, the district court denied Benford's application. This appeal followed.

In February 2020, the State moved to dismiss this appeal as moot. The State explained that, in November 2019, the Iowa Board of Parole granted Bedford a renewed special sentence release.[2] And because Bedford "has already returned to special sentence parole release," the State argued, reversal of the April 2018 revocation would "have no practical effect upon Benford."

Benford resisted. He pointed out that, through this PCR action, he challenged the "unconstitutional terms and conditions" that governed his prior release and, ultimately, led to revocation. And although he has been released

---

[1] As stated on the cover of Benford's appellate brief, the case underlying this appeal is PCCV121013. We note that the district court order from which Benford appeals also resolved another case, PCCV121511. That case is not before us.

[2] "Normally on appeal we cannot consider matters outside the trial court record. There is an exception to this general rule for mootness issues. 'Matters that are technically outside the record may be submitted in order to establish or counter a claim of mootness.'" *Clarke Cnty. Reservoir Comm'n v. Robins*, 862 N.W.2d 166, 170 n.3 (Iowa 2015) (citation omitted). Here the State supported its motion to dismiss with an offender movement summary. It shows Benford's return to special sentence parole on November 6, 2019.

again, he has reason to continue those original challenges. Benford explained the situation this way:

> Benford was previously released to special sentence parole on November 4, 2016. *See* State's Exhibit 1 (Offender Movement Summary). However, due to the enforcement of unconstitutional terms in his parole agreement, his parole was revoked. Benford's November 6, 2019 release to special sentence parole now begins the entire process over again. If Benford fails to abide by the unconstitutional terms of his parole, he will be revoked again.
>  Thus, Benford's problem is not just that the parole was revoked. The problem is the underlying reasons that the parole was revoked. And, because he is on parole currently, those same underlying reasons that created the initial grievance continue to exist for him as well as any other parolees with the same parole terms.
>  Benford submits that his issues are current and ongoing and that a judgment from the [c]ourt will alter the conditions of special sentence parole for him and other similarly situated parolees, and, therefore the issues are not moot.

Our supreme court ordered the State's motion submitted with the appeal.[3] Later, the supreme court transferred the case to this court.

## II. Standard of review

Postconviction proceedings are normally reviewed for errors at law. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). But our review of constitutional issues is de novo. *Id.*

## III. Analysis

"One familiar principle of judicial restraint is that courts do not decide cases when the underlying controversy is moot." *Rhiner v. State*, 703 N.W.2d 174, 176 (Iowa 2005). "The key in assessing whether an appeal is moot is determining

---

[3] The State's appellate brief raises the mootness issue again. Benford's briefs do not address the issue. So we focus on the arguments raised in Benford's resistance to the State's motion to dismiss.

whether the opinion would be of force or effect in the underlying controversy." *State v. Avalos Valdez*, 934 N.W.2d 585, 589 (Iowa 2019) (citation omitted).

The controversy "underlying" Benford's PCR application was whether the State properly revoked Benford's release in April 2018. An opinion reversing the April 2018 revocation—and, therefore, requiring Benford's release—would have no force or effect because Benford has already been released. So Benford's appeal is moot. *Cf. Wilson v. Farrier*, 372 N.W.2d 499, 501 (Iowa 1985) (holding that, after petitioner was paroled, his complaints regarding disciplinary sanctions such as administrative segregation became "academic" and the case was moot).[4]

As already mentioned, though, Benford believes the "problem is not just that" his release was previously revoked. "The problem[s]," he says, are *the conditions of release* that led to his prior revocation and—since his release—now subject him to future revocation. Benford contends those conditions include "unconstitutional terms." And, he argues, "a judgment from [this c]ourt" could properly "alter" those conditions for the better. So the case is "not moot," he contends.

---

[4] We acknowledge our discretion to decide a moot action under the "public-importance exception." *Avalos Valdez*, 934 N.W.2d at 589 (discussing factors to be considered). But we decline to exercise that discretion here. Although Benford's resistance to the motion to dismiss contains a passing reference to the public-importance exception, he has not briefed it for us. Moreover, we infer from Bedford's resistance that his public-importance argument (if any) would focus on the alleged unconstitutionality of conditions of release which, he suggests, also impact "other similarly situated parolees." As further discussed above, however, concerns about conditions of release must be pursued through the Iowa Board of Parole first and then, if necessary, a judicial review action under Iowa Code chapter 17A. *See Benford*, 2018 WL 3912118, at *1. We see no public benefit in permitting an end run.

In one of Benford's prior appeals, though, we concluded Benford could not use a PCR action—like this one—to argue that conditions of release are unconstitutional. *Benford*, 2018 WL 3912118, at *1 (concluding "the district court did not err in finding Benford may not challenge his parole conditions in a PCR proceeding"). Rather, to challenge his release conditions, Benford must (1) exhaust his administrative remedies with the Iowa Board of Parole; and then, if unsatisfied, (2) pursue a judicial review proceeding under Iowa Code chapter 17A, "'the exclusive means by which a person . . . adversely affected by' the Board's decisions may seek judicial review of those decisions." *Id.* (alteration in original) (quoting Iowa Code § 17A.19 (2016)). Benford has not pursued those steps (although he still could). So we cannot address his concerns. And we cannot grant him relief.

We grant the State's motion to dismiss.

**APPEAL DISMISSED.**