# IN THE COURT OF APPEALS OF IOWA

No. 22-0362
Filed June 15, 2022

**IN THE INTEREST OF A.B.,**
**Minor Child,**

**STATE OF IOWA,**
Appellant.
_____

Appeal from the Iowa District Court for Fayette County, Linnea M.N. Nicol,
District Associate Judge.

The State seeks reversal of the juvenile court's determination that the State
failed to make reasonable efforts in finding a suitable placement for the child.
**APPEAL DISMISSED.**

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney
General, for appellant State.

Jeremiah W. White, West Union, for appellee mother.

Kimberly S. Lange of Public Defenders Office, Waterloo, attorney and
guardian ad litem for minor child.

Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

The State seeks reversal of the juvenile court's determination in its child-in-need-of-assistance (CINA) dispositional order that the State failed to make reasonable efforts in finding a suitable placement for the child.

## I.     Factual and Procedural Background

At all times relevant to this proceeding, the child in this case, A.B., was seventeen years old. The child came to the attention of the Iowa Department of Human Services (DHS) when she was ready for discharge from a hospital following a mental-health committal. Neither her mother nor her estranged father would permit her to return to their homes. A temporary removal and CINA adjudicatory hearing was held. The child was adjudicated a CINA and was removed from the home. Throughout this matter, the parents and child all agreed with the out-of-home placement.

Following removal, the child remained placed in shelter care awaiting placement in family foster care or supervised apartment living. Numerous services were ordered at the time of adjudication and utilized through the time of the dispositional hearing.

At the dispositional hearing, the juvenile court expressed concerns about the child's placement. The court stated: "Well, it's hard for me to find that there are reasonable efforts when we are not able to find a foster home. I don't look at [the child] as somebody who would be typically hard to place." The court also offered the following thoughts:

> And I don't want to set her up to fail, so I'm going to order that the [DHS] contact Four Oaks and that you file a report regarding their efforts to find a foster home, and I'm going to order that Four Oaks

meet with you, come to your office, meet with you weekly and explain to you their efforts to find a foster home until they find a foster home, and I don't know what more I can do to help find a foster home, but I kind of feel like we've not—I mean, we could debate about the wisdom of outsourcing the job of finding a foster home, but the [DHS] has chosen to do that, and this is not the only case in which they've completely failed to find a foster home. I think the contract has certain contract measures in it that—that they have already exceeded the amount of time they get to find a foster home, and I think it's time for us to start pushing the fact that they are in breach of their contract with the [DHS] and the continued failure makes that breach worse. And I'm going to find a lack of reasonable efforts, and that's not about anything you've done or not done, [DHS worker], but that's about the nature of the way the [DHS] has chosen to throw caution to the wind with this foster home situation.

> And so I want to be clear. I expect you to find a foster home. I will authorize a clustered or scattered site. I mean, I authorized supervised apartment living and you do what you do, but I think it's ridiculous that there's no foster home for her that they have been able to find . . . .

Following the hearing, the court followed up with a written order that stated:

> The relationship between [the child] and her own family continues to be strained. Historically the family has been involved in family counseling, [Behavioral Health Intervention Services], individual counseling and services through the Child Health Specialty Clinics including medication management. Currently family counseling is not occurring.
> This Court cannot find that reasonable efforts have been provided when the [DHS] has found no foster home, no supervised apartment living and has no alternative to the youth shelter for [the child]."

The State appeals from this order finding a lack of reasonable efforts. No other party submitted any filings with our court.

## II. Mootness

In its petition on appeal, the State calls our attention to the fact that, nine days after the filing of the dispositional order at issue on this appeal, a foster home was located and the child was placed in that home. Two days after the child was placed, on the State's motion, the juvenile court issued an order finding that the

DHS had made reasonable efforts to prevent or eliminate the need for the child's removal. The court's dispositional order finding lack of reasonable efforts and its later order finding that reasonable efforts had then been made were both filed in the same calendar month.

This sequence of events raises an issue of mootness regarding the State's appeal. As the issue of mootness may be dispositive, we offered the parties the opportunity to submit supplemental briefs on the issue. Only the State took us up on the offer. In its supplemental brief, the State provided additional facts that add another layer to the issue of mootness—specifically that the child is not eligible for Title IV-E federal funding despite her continuing out-of-home placement because her family's income makes her ineligible for such funding.

We now turn to the issue of mootness and start by noting two principles. First, even though no party has urged dismissal of the appeal on mootness grounds, we can raise the issue on our motion.[1] Second, the events that raise the issue of mootness occurred after the entry of the order being appealed. As a result, those events are technically outside the record. This does not prevent us from considering those events, however, because we are permitted to consider matters outside the record in determining a question of mootness.[2] We choose to address

---

[1] *See Bribriesco-Ledger v. Klipsch*, 957 N.W.2d 646, 649 (Iowa 2021) ("No party has raised mootness as a ground to prevent our consideration of this appeal, but, as always, 'an appellate court has responsibility *sua sponte* to police its own jurisdiction.'" (quoting *Crowell v. State Pub. Def.*, 845 N.W.2d 676, 681 (Iowa 2014))).

[2] *See Riley Drive Ent. I, Inc. v. Reynolds*, 970 N.W.2d 289, 296 (Iowa 2022) ("An appellate court may consider matters technically outside the district court record in determining a question of mootness.").

the issue of mootness on our own motion and to consider the events that occurred after the entry of the dispositional order from which the State appeals.

"Courts exist to decide cases, not academic questions of law. For this reason, a court will generally decline to hear a case when, because of changed circumstances, the court's decision will no longer matter. This is known as the doctrine of mootness."[3]

Here, two changed circumstances make it apparent that it does not matter what our decision is regarding whether the juvenile court's prior finding of lack of reasonable efforts is correct. The first is the juvenile court's later finding that the DHS has now made reasonable efforts. The original finding of lack of reasonable efforts would suspend eligibility for Title IV-E funding, but the suspension does not take effect until the end of the month in which the finding is made.[4] As the later reasonable-efforts finding was made so soon on the heels of the prior finding of lack of reasonable efforts (i.e., in the same calendar month), the prior finding does not negatively impact funding. The second changed circumstance is the fact that we now know that the child is not eligible for Title IV-E funding due to her family's income level.[5] As the child is not eligible for such funding anyway, the lack-of-reasonable-efforts finding has no practical impact.

These two circumstances make this appeal moot. The purpose of the

---

[3] *Homan v. Branstad*, 864 N.W.2d 321, 328 (Iowa 2015).

[4] *See* 45 C.F.R. § 1356.21(b)(2)(ii) (suspending eligibility for Title IV-E funding upon a judicial determination of lack of reasonable efforts, but postponing such suspension until the end of the month in which the judicial determination is made).

[5] *See* 45 C.F.R. § 1356.21(*l*) (requiring a child subject to a voluntary placement agreement to qualify for certain federal benefits at the time of the agreement in order to also qualify for Title IV-E funding).

State's appeal is to avoid the loss of funding that comes with a lack-of-reasonable-efforts finding. As it turns out, that finding has no impact on funding, so it does not matter whether the juvenile court was right or wrong, and the issue is moot.

In spite of the issue being moot, the State urges us to apply the public-importance exception. This is an exception to the general rule against deciding moot issues when matters of public importance are presented and the problem is likely to recur.[6] Four factors are considered in determining whether to exercise our discretion to apply this exception:

> (1) the private or public nature of the issue; (2) the desirability of an authoritative adjudication to guide public officials in their future conduct; (3) the likelihood of the recurrence of the issue; and (4) the likelihood the issue will recur yet evade appellate review.[7]

In support of urging us to apply this exception, the State highlights the juvenile court's apparent dissatisfaction, not with the specific actions of the DHS worker involved in this case, but with the DHS's broader policy choices. Because of this higher-level dissatisfaction, the State argues the circumstances that led to the juvenile court's decision are likely to recur as "[t]his is not the first, and it will not be the last child in DHS custody for whom it will take time to locate an appropriate, available foster home." The State further argues that the issue will avoid appellate review because, whenever a juvenile court finds that the DHS is failing to comply with its reasonable-efforts mandate, the DHS will proceed diligently in its attempt to remedy the problem. The State argues that, given the length of time necessary to hear an appeal, in most if not all cases, the DHS will

---

[6] *Homan*, 864 N.W.2d at 330.

[7] *Homan*, 864 N.W.2d at 330 (quoting *Maghee v. State*, 773 N.W.2d 228, 234 (Iowa 2009)).

have found a way to remedy the problem before completion of the appellate process, thus making the issue unreviewable.

We do not share the State's view that application of the public-importance exception is warranted here. Reasonable-efforts determinations are so fact specific that a proclamation from us on whether a particular determination was right or wrong will provide little guidance in future cases.[8] This reality impacts all four factors in a way that cuts against applying the exception. The fact-specific nature of these decisions makes it more private than public in nature, it results in an adjudication providing little guidance to public officials in their future conduct, it makes it unlikely the same facts will recur, and it makes it unlikely that a review of the decision can evade appellate review. So, we decline to exercise our discretion to apply the public-importance exception.

## III. Conclusion

We are not persuaded that resolution of whether the juvenile court's lack-of-reasonable-efforts finding was correct is anything beyond an academic exercise. There being no remaining justiciable controversy, the appeal must be dismissed as moot.[9]

**APPEAL DISMISSED.**

---

[8] *See In re N.W.*, No. 21-0071, 2021 WL 1399250, at *4 n.3 ("Because of the fact-intensive nature of termination cases, other cases are of 'little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us.'" (quoting *In re C.L.C.*, 479 N.W.2d 340, 343 (Iowa Ct. App. 1991))).

[9] *See Clarke Cnty. Reservoir Comm'n v. Robins*, 862 N.W.2d 166, 173 (Iowa 2015) ("As a general rule, we will dismiss an appeal when judgment, if rendered, will have no practical legal effect upon the existing controversy." (quoting *In re Guardianship of Kennedy*, 845 N.W.2d 707, 710–11 (Iowa 2014))).